Bruce W. WADSWORTH, Administrator of New Hampshire Employers' Benefit Trust and Northern New England Benefit Trust, Appellant,

v.

Francis E. WHALAND, Commissioner, Department of Insurance, State of New Hampshire, Appellee.

James M. DAWSON, Administrator of Northern New England Carpenters Health and Welfare Fund, New Hampshire Masons Health and Welfare Fund, New Hampshire Plumbers Health and Welfare Fund, New Hampshire Sheet Metal Workers # 297 Health and Welfare Fund, Appellant,

v.

Francis E. WHALAND, Commissioner, Department of Insurance, State of New Hampshire, Appellee.

Nos. 77–1135 and 77–1136.

United States Court of Appeals, First Circuit.

Heard June 2, 1977.

Decided Sept. 1, 1977.

David L. Nixon, Manchester, N. H., with whom Randolph J. Reis, Nashua, N. H., and Brown & Nixon Professional Assn., Manchester, N. H., were on brief, for James M. Dawson, etc., appellant.

John J. Flaherty, Portland, Maine, with whom Peter H. Rysman and Preti & Flaherty, Portland, Maine, were on brief, for Bruce W. Wadsworth, appellant.

George J. Pantos, Michael J. Bartlett, Vedder, Price, Kaufman, Kammholz & Day, Washington, D. C., and Robert S. Stone,

Senior Counsel, International Business Machines Corporation (IBM), Armonk, N. Y., on brief, for Erisa Industry Com., amicus curiae.

James C. Sargent, Jr., Asst. Atty. Gen., Concord, N. H., with whom David H. Souter, Atty. Gen., and Andrew R. Grainger, Atty., Concord, N. H., were on brief, for appellees.

Warren R. Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Richard A. Lockridge, and Stephen Shakman, Sp. Asst. Attys. Gen., St. Paul, Minn., on brief, for the State of Minnesota, amicus curiae.

Before COFFIN, Chief Judge, LAY, Circuit Judge,* CAMPBELL, Circuit Judge.

LAY, Circuit Judge.

This case presents an important and fundamental question of federal preemption because of an alleged conflict between the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C § 1001 et seq., and the New Hampshire state law regulating the content of group insurance policies, Chapter 57 of the Laws of 1976, N.H.Rev. Stat.Ann. §§ 415:18–a, 419:5–a and 420:5–a (1976). Chapter 57 requires the "issuers" of group health insurance policies to provide coverage for the treatment of mental illnesses and emotional disorders.[1] ERISA does not require this. Administrators of various health and welfare funds which provide benefits chiefly through the purchase of group health insurance,[2] brought this action against Francis E. Whaland, Commissioner of Insurance for the State of New Hampshire, seeking a declaration that Chapter 57 is unconstitutional and an in-

---

* Of the Eighth Circuit, sitting by designation.

1. *Each insurer that issues or renews any policy* of group or blanket accident or health insurance providing benefits for medical or hospital expenses, shall provide to each group, or to the portion of each group comprised of certificate holders of such insurance who are residents of this state and whose principal place of employment is in this state, coverage for expenses arising from the treatment of mental illnesses and emotional disorders. . . .

N.H.Rev.Stat.Ann. § 415:18–a(I) (1976) (emphasis added).

2. Northern New England Carpenters Health and Welfare Fund, New Hampshire Masons Health and Welfare Fund, New Hampshire Plumbers Health and Welfare Fund, New Hampshire Sheet Metal Workers # 297 Health and Welfare Fund, New Hampshire Employers' Benefit Trust, and Northern New England Benefit Trust.

junction restraining its enforcement. The fund administrators' principal contention is that ERISA preempts the provisions of Chapter 57, to the extent that that chapter applies to employee benefit plans.[3] Alternatively, they assert that the New Hampshire statutory scheme is an undue burden on interstate commerce and violates the due process and equal protection clauses of the United States Constitution. Both parties filed motions for summary judgment. After an evidentiary hearing relating primarily to the issue of irreparable harm, the district court, the Honorable Hugh H. Bownes presiding, held that ERISA did not preempt state regulation of group insurance policies, and that Chapter 57 did not contravene any provision of the Constitution. We affirm.

## I.

### ERISA.

As the preamble to the Act indicates,[4] ERISA is the result of a congressional en-

---

**3.** The importance of the preemption issue is highlighted by the participation of the ERISA Industry Committee (ERIC) and the State of Minnesota as amicus curiae. The State of Minnesota recently enacted a comprehensive health insurance law which requires certain minimum health-care benefits. *See* Minnesota Comprehensive Health Insurance Act, Minn. Stat.Ann. Ch. 62E (West Supp.1977). The State of Minnesota stresses the overall importance of the continued efficacy of state insurance laws, as recognized by § 514(b)(2)(B) of ERISA, 29 U.S.C § 1144(b)(2)(B), and as required by the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–15. ERIC, a nonprofit association of 80 major corporations who maintain group health plans covering nearly 7 million employees, joins the plaintiff administrators in urging that ERISA preempts state laws which directly or indirectly "relate" to employee welfare plans. Such a result is required, they believe, to avoid the substantial, adverse effects of concurrent federal and multiple state regulation of welfare benefit plans. The ERIC brief concludes with this comment:

In the final analysis, the victims of a fragmented scheme of Federal and multi-state regulation of benefit plans are likely to be employees, themselves—the very persons intended to be benefited by plan regulation. Faced with mounting costs, unwieldy administration and vexatious litigation, at least some employers will undoubtedly terminate or curtail their employee welfare benefit plans; others, considering the adoption of such plans, will abandon the idea. Such a result would not only be directly contrary to the best interest of employees but also frustrate Congressional intent in adopting ERISA as a mechanism for encouraging the growth of employee benefit plans.

**4.** Section 2 of ERISA states:

(a) The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations; that they have become an important factor in commerce because of the interstate character of their activities, and of the activities of their participants, and the employers, employee organizations, and other entities by which they are established or maintained; that a large volume of the activities of such plans is carried on by means of the mails and instrumentalities of interstate commerce; that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; that they substantially affect the revenues of the United States because they are afforded preferential Federal tax treatment; that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

(b) It is hereby declared to be the policy of this Act to protect interstate commerce and

deavor to curb the funding and disclosure abuses of employee pension and welfare benefit plans by establishing minimum federal standards. Title I of ERISA, composed of five main subparts, provides the substantive regulatory provisions governing two basic types of employee benefit plans. Those two types are *pension* plans, which provide for retirement or deferred income,[5] and *welfare* benefit plans, which provide medical, health, sickness, accident, and other non-pension benefits.[6]

Part one of Title I [7] deals with the reporting and disclosure requirements for both types of plans. The basic purposes of these requirements are to inform employees of their rights, and to assist the Secretary of Labor in determining the financial soundness of the plan. *See* Brummond, *Federal Preemption of State Insurance Regulation Under ERISA*, 62 Iowa L.Rev. 57, 61–62 (1976). Thus, the fund administrators are required to provide each participant and each beneficiary with a summary description of their plan drafted in language understandable by the average plan participant [8] and to make available a copy of the plan's annual report.[9] A copy of the information provided to participants and beneficiaries, as well as other data, must be furnished to the Secretary of Labor.[10]

Parts two [11] and three [12] of Title I are limited in that they apply only to pension benefit plans. Part two creates minimum vesting standards and participation requirements, while part three provides funding requirements.

Part four [13] of the Title sets forth the fiduciary standards for the management of employee pension and welfare benefit plans. These standards provide in part that the plan be in writing,[14] the assets be held in trust [15] exclusively for the benefit of employees,[16] and that the plan investments be diversified.[17] A "prudent man" standard is established for fund administrators, and prohibited financial transactions are listed.[18]

Finally, part five [19] contains the administrative and enforcement provisions which apply to both employee pension plans and welfare benefit plans. It creates broad criminal and civil penalties [20] and sets forth general guidelines governing claims procedures.[21] Part five also gives the Secretary of Labor broad investigative powers [22] and authority to promulgate regulations.[23]

## II.

*The "Funds".*

The funds administered by plaintiffs are employee welfare benefit plans within the

the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.
29 U.S.C §§ 1001(a)–1001(b).

**5.** 29 U.S.C § 1002(2).

**6.** 29 U.S.C § 1002(1).

**7.** 29 U.S.C. §§ 1021–31.

**8.** 29 U.S.C § 1022(a)(1).

**9.** 29 U.S.C § 1023(a)(1)(A).

**10.** 29 U.S.C § 1021(b).

**11.** 29 U.S.C. §§ 1051–61.

**12.** 29 U.S.C. §§ 1081–86. For further discussion of subpart three see Brummond, *Federal Preemption of State Insurance Regulation Under ERISA*, 62 Iowa L.Rev. 57, 62–63 (1976).

**13.** 29 U.S.C. §§ 1101–14.

**14.** 29 U.S.C § 1102(a)(1).

**15.** 29 U.S.C § 1103(a).

**16.** 29 U.S.C § 1104(a)(1)(A)(i).

**17.** 29 U.S.C § 1104(a)(1)(C).

**18.** 29 U.S.C. §§ 1104(a)(1)(B), 1106.

**19.** 29 U.S.C §§ 1131–44.

**20.** 29 U.S.C. §§ 1131–32.

**21.** 29 U.S.C § 1133.

**22.** 29 U.S.C § 1134.

**23.** 29 U.S.C § 1135.

meaning of § 3 of ERISA.[24]  All of the funds, with the exception of New Hampshire Employer's Benefit Trust, are "Taft-Hartley Trusts" in that they are also regulated by § 302 of the Labor Management Relations Act.[25]  Also with the exception of New Hampshire Employer's Benefit Trust, which is voluntarily operated by employees, the funds are the products of collective bargaining agreements that require employers to contribute at a specified level. While the level of contributions is specified by the collective bargaining agreements, benefits are not.

Each year the fund administrators meet with local unions to determine the types of coverage desired by the members.  The fund administrators must obtain, at the least possible cost, the coverage chosen.  To fulfill this obligation the fund administrators, with the aid of insurance consultants, put together packages upon which they request sealed bids from insurance companies. Although the funds are self-insurers on a few benefits, approximately 90 per cent of the benefits are provided through group insurance policies.  However, for all practical purposes, under the group insurance policies the funds are self-insurers who retain the insurance companies to provide the administrative service of processing claims.[26] Because the premiums are experience rated the amount of claims for the year is projected; if the actual amount of claims is higher than the projection, the premium is adjusted upward; if the actual amount of claims is lower than the projection, the premium is adjusted downward.  So in the long run, the funds reimburse the insurance company for all claims.

## III.

### A.  *The Preemption Issue.*

The preemption issue is raised by § 514 of ERISA[27] which provides that all state laws that "relate to" employee benefit plans are superseded.[28]  This sweeping language is modified by a saving clause which reaffirms the authority of the states to regulate insurance.[29]  However, the saving clause is further limited in that no plan will be "deemed" to be an insurance company, insurer or engaged in the business of insurance for the purpose of any state insurance law.[30]

Plaintiffs contend that § 514 preempts any *direct or indirect* regulation of employ-

---

**24.** 29 U.S.C § 1002(1).

**25.** 29 U.S.C § 186(c).

**26.** In *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), the Supreme Court made a similar observation concerning General Electric's "Weekly Sickness and Accident Insurance Plan:"

With respect to the Plan, General Electric is, in effect, a self-insurer.  While General Electric has obtained, for employees outside California, an insurance policy from the Metropolitan Life Insurance Company, this policy involves the payment of a tentative premium only, subject to adjustment in the light of actual experience.  Pretrial Stipulation of Facts, ¶ 11.  In effect, therefore, the Metropolitan Life Insurance Company is used to provide the administrative service of processing claims, while General Electric remains, for all practical purposes, a self-insurer.

429 U.S. at 129 n. 3, 97 S.Ct. at 404.

**27.** 29 U.S.C § 1144.

**28.** Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall *supersede* any and *all* State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . . . .

29 U.S.C § 1144(a) (emphasis added).

**29.** Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from *any law of any State which regulates insurance,* banking, or securities.

29 U.S.C § 1144(b)(2)(A) (emphasis added).

**30.** Neither *an employee benefit plan* described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, *shall be deemed to be an insurance company or other insurer,* bank, trust company, or investment company *or to be engaged in the business of insurance* or banking *for purposes of any law of any State purporting to regulate insurance companies, insurance contracts,* banks, trust companies, or investment companies.

29 U.S.C § 1144(b)(2)(B) (emphasis added).

ee benefit plans by the state.[31] They urge that Chapter 57 clearly "relates" to employee benefit plans and therefore the provisions of ERISA "supersede" Chapter 57 as it applies to them. On the other hand the Commissioner urges that no direct conflict between ERISA and Chapter 57 exists, and that the saving clause specifically preserves the efficacy of state regulation of insurance. The Commissioner finds support for his position in the McCarran-Ferguson Act[32] which reflects a congressional policy to allow the states to regulate the business of insurance.[33]

### B. *The New Hampshire Act.*

In resolving the preemption issue, it is first necessary to determine the scope of the New Hampshire statute. Chapter 57 applies to "each insurer that issues or renews any policy of group or blanket accident or health insurance" and "certificate holders of such insurance." The issue is whether employee welfare funds are insurers under the statute. In the event they are, we would have no difficulty finding explicit preemption by ERISA notwithstanding the saving clause.[34]

■ In determining the scope of Chapter 57 we are without the aid of a definitive New Hampshire state court interpretation. The state attorney general, without conceding its direct non-applicability to employee benefit plans, indicates that "Chapter 57 is not a disclosure law, and it does not purport to regulate benefit plans." The plaintiffs, on the other hand, assert that they are not "self-insurers," despite the fact that their insurance premiums are experience rated. Without further clarification we find that Chapter 57 was codified as an insurance law and specifically relates to insurers who issue certificates of insurance. Under a group insurance policy, a plan, as such, is really the "insured" and it does not issue certificates of insurance to its members. Under these circumstances we find there is no intention under Chapter 57 to directly regulate employee welfare plans as insurers.

This resolution, however, does not end our analysis. Plaintiffs further contend that Chapter 57 impermissibly regulates employee benefit plans by indirectly regulating the content of the group insurance policies which the funds purchase, and that ERISA preempts any indirect state regulation of employee benefit plans. The State of New Hampshire responds that ERISA was not intended to preempt any state law unless that law directly conflicts with or duplicates the regulatory provisions of ERISA.

### C. *Legislative History of § 514(a).*

■ We turn first to the state's argument. New Hampshire contends that Congress' use of the word "supersede" in § 514(a) indicates an intention to avoid regulatory vacuums created by displacing state

---

**31.** In making this contention plaintiffs rely on the definitions of "State law" and "State" contained in § 514(c), which provides:

    (2) The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, *which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans* covered by this subchapter.

29 U.S.C § 1144(c) (emphasis added).

**32.** 15 U.S.C. §§ 1011–15. In particular, § 2(b) of the McCarran-Ferguson Act, provides:

    No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, *unless such Act specifically relates to the business of insurance* . . . .

**33.** Section 514(d) of ERISA reaffirms the congressional policy set forth in the McCarran-Ferguson Act by providing:

    (d) Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.

29 U.S.C § 1144(d).

**34.** As we will discuss, the preemption clause makes explicit that "all State laws" as they "relate" to "any employee benefit plan" are "superseded." Additionally, § 514(b)(2)(B) clearly removes an employee welfare plan from the application of the saving clause. *Hewlett-Packard Co. v. Barnes,* 425 F.Supp. 1294 (N.D. Cal.1977).

15 U.S.C § 1012(b) (emphasis added).

regulation only in areas not principally covered by ERISA.[35] We disagree. The legislative history manifests that Congress intended to preempt all state laws that *relate* to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA.

The original versions of ERISA, both in the House and Senate, limited the scope of preemption to areas expressly covered by the bill. The House version listed the specific areas of federal regulation; the Senate version preempted all state laws which were related to the "subject matter" regulated by the bill.[36] However, during conference the language limiting preemption was replaced by the present sweeping preemption language. The conference committee report and the floor debates explain that the reason for the change was to avoid "the possibility of endless litigation over the validity of State action that might impinge on Federal regulation . . . and potentially conflicting State laws hastily contrived to deal with some particular aspect of private welfare or pension benefit plans not clearly connected to the Federal regulatory scheme."[37] Congress, therefore, clearly rejected a concept of preemption limited to conflicting or duplicate state law, in favor of applying the principle in its "broadest sense."[38]

Thus, we agree with plaintiffs that Chapter 57 is a state law which indirectly relates to employee benefit plans and is subject to preemption. However, we cannot agree that preemption necessarily follows. Chapter 57 is also a state law regulating insurance and is expressly exempted from preemption by § 514(b)(2)(A).[39] Any possible conflict between the state's regulation of insurance and the regulatory provisions of ERISA must be resolved by the application of the "deemer" clause, § 514(b)(2)(B).

### D. *The "Deemer" Clause.*

■ The deemer clause simply provides that a state may not deem an employee benefit plan to be an insurance company, insurer, or in the business of insurance for the purposes of its insurance laws. Consequently, a state may not regulate an employee benefit plan simply because the plan serves as self-insurer on all of its benefits. Thus, the deemer provision prevents a state from subjecting a plan, as a business of insurance, to the state's general insurance laws or enacting special legislation regulating plans as a "unique variety of insurance." *Hewlett-Packard Co. v. Barnes*, 425

---

**35.** This argument was made by Brummond. *See Brummond, supra*, 62 Iowa L.Rev. at 99.

**36.** Section 514(a) of H.R. 2, 93d Cong., 1st Sess. (1973) provided:

(a) It is hereby declared to be the express intent of Congress that, except for actions authorized by section 503(e)(1)(B) of this Act and except as provided in subsection (b) of this section the *provisions of part 1 of this subtitle shall supersede any and all laws of the States and of political subdivisions thereof insofar as they may now or hereafter relate to the reporting and disclosure responsibilities, and fiduciary responsibilities, of persons acting on behalf of any employee benefit plan to which part 1 applies.*

120 Cong.Rec. 4742 (1974) (emphasis added). Section 699(a) of the Senate version provided:

(a) PRE–EMPTION OF STATE LAWS.—It is hereby declared to be the express intent of Congress that, except for actions authorized by section 694 of this title, the provisions of this Act or the Welfare and Pension Plans Disclosure Act *shall supersede any and all laws of the States and of political subdivisions thereof insofar as they may now or*

*hereafter relate to the subject matters regulated by this Act or the Welfare and Pension Plans Disclosure Act. . . .*
120 Cong.Rec. 5002 (1974) (emphasis added).

**37.** 120 Cong.Rec. 29942 (1974) (remarks of Sen. Javits). *See also* H.R. No. 93–1280, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S. Code Cong. & Admin.News, p. 5038; S.R. No. 93–1090, 93d Cong., 2d Sess. (1974); 120 Cong. Rec. 29197 (1974) (remarks of Rep. Dent); 120 Cong.Rec. 29933 (1974) (remarks of Sen. Williams). For an excellent discussion of the legislative history see *Hewlett-Packard Co. v. Barnes*, 425 F.Supp. 1294, 1298–1300 (N.D.Cal. 1977).

**38.** 120 Cong.Rec. 29197 (1974) (remarks of Rep. Dent).

**39.** Section 514(b)(2)(A) provides that ERISA does not relieve any "person" from any state insurance law. 29 U.S.C. § 1144(b)(2)(A). Included within the definition of "person" are trusts created under such a plan.

F.Supp. 1294, 1300 (N.D.Cal.1977). However, on its face the deemer provision does not prohibit a state from indirectly affecting plans by regulating the contents of group insurance policies purchased by the plans.

■ We are unable to accept plaintiffs' contention that the deemer provision forbids the states from indirectly affecting employee benefit plans by regulating group insurance. In order to accept plaintiffs' construction, we would have to construe § 514 without its saving clause pertaining to state regulation of insurance. This we cannot do; we must interpret the statute as written. Congress was fully aware of the functions and scope of employee benefit plans [40] and, nonetheless, exempted state laws regulating insurance from preemption. We also find that plaintiffs' suggested construction is not required by the definition of "State" as any state agency which "purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this title." ERISA § 514(c)(2). Such a construction would completely emasculate the saving clause. It is our duty when interpreting an act of Congress to construe it in such a manner as to give effect to all its parts and to avoid a construction which would render a provision surplusage. See, e.g., McDonald v. Thompson, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164 (1938); Wilderness Society v. Morton, 156 U.S.App.D.C. 121, 479 F.2d 842 (1973), cert. denied, 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973).

The plaintiffs' interpretation would greatly diminish the state's primacy in regulating insurance. It would nullify all state insurance laws concerning group insurance when the group policy is issued to an employee benefit plan. We do not find, absent a clear statement of intent, that Congress meant to so restrict a state's authority to regulate insurance. Cf. United States v. Bass, 404 U.S. 336, 350, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

Our interpretation of the deemer provision comports with the national policy of state primacy in the regulation of insurance announced by Congress in the McCarran-Ferguson Act.[41] Under that Act, the only congressional enactment which may "invalidate, impair, or supersede" any state insurance law is an act which "specifically relates to the business of insurance . . ."[42] This national policy is twice reaffirmed by ERISA in § 514: first with the saving clause, and again with subsection (d).

■ We conclude that ERISA does not preempt application of state law to group insurance policies when such policies are purchased by employee benefit plans. The argument that the plans would be detrimentally affected and might face bankruptcy or extinction cannot change the plain meaning of ERISA. Assuming such detrimental consequences exist, we note that Congress fully intended to appraise the implementation of the Act and to provide remedial legislation where necessary.[43] In any event such arguments are not best directed to the courts.

**40.** Congress defined an employee benefit plan as one providing benefits "through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1).

**41.** 15 U.S.C. §§ 1011–15. In the landmark decision of Paul v. Virginia, 75 U.S. (8 Wall.) 168, 19 L.Ed. 357 (1868), the Supreme Court held that "[i]ssuing a policy of insurance [was] not a transaction of commerce." Id. at 183. However, in 1944 the Supreme Court reversed Paul v. Virginia, supra, in United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), holding that the business of insurance was interstate in nature. Id. at 539, 64 S.Ct. 1162. The decision cast considerable doubt on the validity of the entire state insurance regulatory mechanism. The McCarran-Ferguson Act dispelled the doubt, however, by reaffirming the ascendency of state regulation in insurance matters.

**42.** 15 U.S.C. § 1012.

**43.** An indication of this continuing concern was Congress' direction that a task force be formed to study and make a full report on "the effects and desirability of Federal preemption of State and local law with respect to matters relating to pension and similar plans . . . ." 29 U.S.C § 1222(a)(4).

## IV.

*Other Issues.*

We briefly review the appellants' remaining arguments. The fund administrators challenge the application of Chapter 67 to employee welfare funds claiming it to be preempted by the National Labor Relations Act and in contravention of the Constitution of the United States. We find no merit to these claims and, as did the district court, we dispose of them summarily.

■ Plaintiffs argue that Chapter 57, since it indirectly affects employee welfare funds, is preempted by general provisions of federal labor law. As we have indicated, Chapter 57 does not relate to employee benefit plans and is not intended to affect labor relations or disputes. The record demonstrates that benefits under any insurance plan are not part of the terms or conditions of collective bargaining agreements. Similarly, it has been held that state regulation of pension plans is not preempted by federal labor law. *White Motor Corp. v. Malone*, 545 F.2d 599 (8th Cir. 1976). State regulations of group insurance policies purchased by employee benefit plans are peripheral to any federal labor law other than ERISA.[44]

■ Plaintiffs additionally assert that Chapter 57 is an unconstitutional burden on interstate commerce. This claim is partially refuted by the fact that Congress fully intended in passing ERISA to retain regulation of insurance within the sphere of the state. There is no proof of any undue burden on commerce.

In *State Board of Ins. v. Todd Shipyards Corp.*, 370 U.S. 451, 82 S.Ct. 1380, 8 L.Ed.2d 620 (1962), the Supreme Court held: "The power of Congress to grant protection to interstate commerce against state regulation or taxation [citations omitted], *or to withhold it* [citations omitted] is so complete that its ideas of policy should prevail." *Id.* at 456, 82 S.Ct. at 1384 (emphasis added and footnote omitted). The Court further noted that with the McCarran-Ferguson Act Congress "provided that the regulations and taxation of insurance should be left to the States, without restriction by reason of the Commerce Clause." *Id.* at 452, 82 S.Ct. at 1381.

■ Plaintiffs also challenge Chapter 57 on due process grounds. The district court found that New Hampshire law does not subject the fund administrators to any criminal penalty for noncompliance with Chapter 57. On this basis it determined that plaintiffs had no legal basis to attack the New Hampshire Act for vagueness. We agree. "The essential purpose of the 'void for vagueness' doctrine is to warn individuals of the criminal consequences of their conduct." *Jordan v. De George*, 341 U.S. 223, 230, 71 S.Ct. 703, 707, 95 L.Ed. 886 (1951).

With regard to plaintiffs' equal protection argument, the district court found that, since they were not insurance companies, the plaintiffs lacked standing to challenge the New Hampshire Act as being in violation of the equal protection clause of the Constitution. We are hesitant to exclude plaintiffs' challenge on a finding of lack of standing. As Judge Stevens (now Mr. Justice Stevens) observed in *Cotovsky-Kaplan Physical Therapy Ass'n, Ltd. v. United States*, 507 F.2d 1363 (7th Cir. 1975): "The test is not whether these plaintiffs are regulated by the statute but whether the interests asserted by them arguably fall within the zone of interests so regulated." *Id.* at 1366.

---

**44.** The McCarran-Ferguson Act provides that no state insurance law is to be superseded by federal law unless that law specifically relates to the business of insurance. 15 U.S.C. § 1012. The Labor Management Relations Act, 29 U.S.C. § 141 et seq., is not a law that specifically relates to the business of insurance. The Labor Management Relations Act does place some restrictions upon so-called "Taft-Hartley Trusts" including a requirement that the trustees provide "fair and equal treatment." 29 U.S.C. § 186. Plaintiffs claim that this duty cannot be satisfied if Chapter 57 is upheld since union members in New Hampshire will be receiving disproportionate benefits. New Hampshire responds that this duty is satisfied when a trustee pays out a given *level* of benefits to employees which is relatively uniform, equitable, and which comports with the level of contributions; and that appellant has no obligation under 29 U.S.C. § 186 to provide the *same type* of benefits to all employees.

However, we need not decide the standing issue. Even assuming standing, we summarily hold that plaintiffs' argument that the statute denies equal protection since it discriminatorily favors Blue Cross-Blue Shield, to be without merit. *See Travelers Ins. Co. v. Blue Cross*, 481 F.2d 80, 86 (3d Cir. 1973).[45]

*The judgment is affirmed.*

---

**45.** The equal protection issue was fully briefed and argued in both the district court and this court and was implicitly rejected by the district court. Thus, our decision is not contrary to the principle enunciated in *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), urging that appellate courts forego passing on constitutional issues not decided by the district court.