**BUCYRUS–ERIE COMPANY, a corporation, Plaintiff-Appellant,**

v.

**The DEPARTMENT OF INDUSTRY, LABOR AND HUMAN RELATIONS OF the STATE OF WISCONSIN, et al., Defendants-Appellees.**

No. 78–2079.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1979.

Decided May 24, 1979.

Joseph E. O'Leary, Chicago, Ill., for plaintiff-appellant.

David C. Rice, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., Mary-Helen Mautner, E. E. O. C., Washington, D. C. (amicus curiae), for defendants-appellees.

Before CUMMINGS and SPRECHER, Circuit Judges, and LEIGHTON, District Judge.*

SPRECHER, Circuit Judge.

The plaintiff, Bucyrus-Erie Co., appeals from the district court judgment denying its request to enjoin various officers of the state of Wisconsin from exercising jurisdiction under the Wisconsin Fair Employment Act, Wis.Stat. §§ 111.31–111.37, over a complaint alleging that plaintiff's employee disability benefit plan is sex discriminatory. The primary issue presented by this appeal is whether the Employee Retirement Income Security Act [ERISA], 29 U.S.C. §§ 1001–1381, preempts the application of state fair employment laws to employee benefit plans.

### I

The facts of the case are not in dispute. Bucyrus-Erie Co. is a Delaware corporation with its corporate headquarters located in Wisconsin. In October 1975, Martha Wasilik, a secretary in the employ of Bucyrus-Erie, requested a leave of absence on the basis of pregnancy. Ms. Wasilik was granted a leave of absence in accordance with company policy.

Under the terms of the company's employee medical benefits plan as then in effect, pregnant employees were only permitted leave from work on an unpaid basis. They were not entitled to utilize accumulated sick-leave benefits. Such benefits were available only for illness, excluding pregnancy. In the fall of 1975, Ms. Wasilik filed charges with the Equal Employment Opportunity Commission and the Wisconsin Department of Industry, Labor and Human Relations (DILHR) alleging that this provision of the company's disability policy was sex discriminatory.

Before the date of the state hearing, the company filed a motion to dismiss alleging that state regulation of the company's disability plan was preempted by federal law. The motion to dismiss was denied but a motion to stay was granted on February 14, 1978.

After losing the motion to dismiss before the state commission, the company promptly commenced this action in the district court seeking to enjoin the Wisconsin state officers from proceeding with the charges in violation of federal law. The lower court dismissed the plaintiff's complaint, rejecting the argument that the state of Wisconsin was engaging in impermissible regulation of the plaintiff's disability plan. We affirm the lower court's dismissal of the complaint.

### II

The principal issue presented by this appeal is whether the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1381 preempts the application of the Wisconsin Fair Employment Act, Wis.Stat. §§ 111.31–111.37, to employee welfare benefit plans which are regulated by ERISA.[1] Although

---

* The Honorable George N. Leighton, District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. The plaintiff also argues that Wisconsin's application of the fair employment act to the plaintiff places an undue burden on interstate commerce in violation of the Commerce Clause of the United States Constitution. Art. I, § 8, cl. 3. In *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), it was established that

[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

The state does have a strong local interest in prohibiting employment discrimination. *Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc.*, 372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963). We adopt the district court's finding that the balance of inter-

the statute is not unambiguous, we conclude that Congress did not intend to preempt the enforcement of state fair employment laws, and we therefore affirm.

Although ERISA's substantive provisions are designed to regulate retirement benefit plans [2] the Act includes other types of benefit plans within its coverage.[3] The parties are in agreement that the Bucyrus-Erie plan governing pregnancy leave is a plan subject to the applicable requirements of ERISA. The fact that the Bucyrus-Erie benefit plan is the subject of federal regulation does not of course inevitably require the preemption of concurrent state regulation.

The principles for determining whether a state law is preempted are well established. If a state and federal regulation directly conflict, the Supremacy Clause, U.S. Const., art. VI, has been interpreted to mandate preemption whenever the state action "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Absent a direct conflict, preemption "depends on the intent of Congress." *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978). Congressional intent may be express or implied. Preemption may be implied when the "structure and purpose" of the federal act presuppose exclusive federal regulation. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed.

1447 (1947). If the intention to preempt is express, the statutory need for preemption is of no consequence.

ERISA does not include any substantive provisions prohibiting an employer from maintaining discriminatory benefit plans. For this reason, we are unable to perceive any direct conflict in the application of both ERISA and the Wisconsin fair employment laws to the Bucyrus-Erie plan. Thus it would be appropriate to require preemption of the Wisconsin statute only if Congress has clearly expressed an intention to effect such preemption.

ERISA does contain express language of preemption. Section 514 of ERISA, 29 U.S.C. § 1144, provides:

(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

. . . . .

(b)(2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

. . . . .

---

ests weighs in favor of the state. *Cf. Wadsworth v. Whaland*, 562 F.2d 70 (1st Cir. 1977), *cert. denied*, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978).

**2.** *See generally Nachman Corp. v. Pension Benefit Guaranty Corp.*, 592 F.2d 947 (7th Cir. 1978).

**3.** 29 U.S.C. § 1003 provides that with certain exceptions, the Act applies to "any employee benefit plan" meeting the interstate commerce prerequisites. An "employee benefit plan" is defined in § 1002:

(1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan . . established or maintained by an employer or

by an employee organization, or by both . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services . . ..

(3) The term "employee benefit plan" or "plan" means an employee welfare benefit plan or an employee pension benefit plan . . ..

(4) Subsection (a) of this section shall not apply to any generally applicable criminal law of a State.

(c) For purposes of this section:

(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. . . .

. . . . .

(d) Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in section 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.

The statute appears to require preemption if the Wisconsin employment law "relates" to an employee benefit plan, as Congress intended to use that term, unless preemption would "alter, amend, modify, invalidate, impair, or supersede" any other federal law, rule or regulation under § 514(d). 29 U.S.C. § 1144(d).

▮ The initial inquiry—whether the Wisconsin fair employment laws "relate" to employee benefit plans—is a difficult one. The Wisconsin Fair Employment Act is a statute of general application and not specifically designed to regulate an employer's administration of welfare benefit plans. The statute prohibits discrimination in employment on the basis of "age, race, creed, color, handicap, sex, national origin or ancestry." Wis.Stat. § 111.31(3). Prohibited acts of sex discrimination may encompass an employer's refusal to hire, termination, or the grant of promotions, and determination of compensation as well as other terms and conditions of employment. § 111.-32(g)(1). It is therefore clear that discrimination against pregnant women in the availability of disability benefits is a form of sex discrimination under the Wisconsin Act[4] and is just one of many specific actions which falls within the general reach of the statute.

In determining whether Congress intends to preempt State laws of general application, the Supreme Court recently characterized their cases in the field of labor preemption as "consistently recogniz[ing] that a congressional intent to deprive the States of their power to enforce such general laws is more difficult to infer than an intent to pre-empt laws directed specifically at concerted activity." *New York Telephone Co. v. New York State Department of Labor*, —— U.S. ——, ——, 99 S.Ct. 1328, 1337, 59 L.Ed.2d 553 (1979). The issue, however, remains one of intention, and section 514 strongly suggests that a statute of general applicability may nonetheless "relate" to a benefit plan.

This intention to include state laws of general applicability within the scope of preemption is readily inferred from the framework of the provisions of section 514.[5] Congress specifically enumerated four exceptions to the broad scope of preemption. One of those exceptions, section 514(b)(4), exempts "any *generally applicable* criminal law of a State." 29 U.S.C. § 1144(b)(4). (emphasis supplied). This provision indicates an intention that the word "relate" extend even to laws of general applicability (as well as an intention to preempt criminal statutes limited in application to welfare benefit plans). The exception would otherwise have been unnecessary. Additionally, the definition of "state" contained in the Act supports this conclusion. The definition includes any instrumentality which "purports to regulate, directly or *indirectly*, the terms and conditions of employee benefit plans . . . ." 29 U.S.C. § 1144(c)(2). (emphasis supplied).

It is also legitimate to inquire whether the term "relate" might properly be narrowed to preempt only those state laws which would operate to frustrate or inter-

---

**4.** Although the statute does not expressly prohibit dissimilar treatment on the basis of pregnancy, the Wisconsin Supreme Court found that such actions constitute sex-based discrimination prohibited under the state statute. *Ray-O-Vac v. Department of Industry, Labor & Human Relations*, 70 Wis.2d 919, 236 N.W.2d 209 (1975).

**5.** It is also apparent from the legislative history discussed *infra*.

fere with the administration of ERISA. As discussed *supra*, the State Fair Employment law does not impose requirements on employee benefit plans that are in conflict with ERISA. This narrow interpretation of the term "relate" has led some courts to conclude that state fair employment statutes do not "relate" to benefit plans within ERISA's preemptive scope. *Gast v. Oregon*, 18 Fair Empl.Prac. Cas. (BNA) 210 (Oregon Ct.App.1978); *Time Insurance Co. v. Department of Industry, Labor and Human Relations*, 16 Fair Empl.Prac.Cas. (BNA) 391 (Wis.Cir.Ct.1978); *Cf. Buczynski v. General Motors Corp.*, 456 F.Supp. 867, 873 (D.N.J.1978); *But see Goodyear Tire & Rubber Co. v. Dept. of Industry, Labor and Human Relations*, 273 N.W.2d 786 (Wis.Ct. App.1978); *Hutchinson and Ifshin, Federal Preemption of State Law Under the Employee Retirement Income Security Act of 1974*, 46 U.Chi.L.Rev. 23, 52–58 (1978). Despite the appeal of this accommodating construction, the legislative history precludes so narrow a reading of the term "relate."

The legislative history of ERISA's preemption section has been thoroughly discussed in *Hewlett-Packard Co. v. Barnes*, 425 F.Supp. 1294, 1298–1300 (N.D.Cal.1977), *aff'd*, 571 F.2d 502 (9th Cir. 1978). The history reveals that as originally passed out of the Senate and House, ERISA was structured to preempt only state regulation which overlapped with the requirements imposed by ERISA. The Conference Committee substituted a preemption section substantially more expansive. Senator Jacob Javits stressed the import of the conferees' change:

> Both House and Senate bills provided for preemption of State law, but—with one major exception appearing in the House bill—defined the perimeters of preemption in relation to the areas regulated by the bill. Such a formulation raised the possibility of endless litigation over the validity of State action that might impinge on Federal regulation, as well as opening the door to multiple and potentially conflicting State laws hastily contrived to deal with some particular aspect of private welfare or pension benefit plans not clearly connected to the Federal regulatory scheme.
>
> Although the desirability of further regulation—at either the State or Federal level—undoubtedly warrants further attention, on balance, the emergence of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans required—but for certain exceptions—the displacement of State action in the field of private employee benefit programs. The conferees—recognizing the dimensions of such a policy—also agreed to assign the Congressional Pension Task Force the responsibility of studying and evaluating preemption in connection with State authorities and reporting its findings to the Congress. If it is determined that the preemption policy devised has the effect of precluding essential legislation at either the State or Federal level, appropriate modifications can be made.

120 Cong.Rec. 29942 (1974).[6]

As the district court in *Hewlett* concluded:

> Overall, the legislative history reveals both that Congress carefully considered the question of preemption, including the feasibility of enacting a more limited preemption provision, and that Congress ultimately enacted Section 514(a) with the express purpose of summarily preempting state regulation of ERISA-covered employee benefit plans.

425 F.Supp. at 1300.

 Therefore we do not think the section can properly be limited to preempt only those state laws which are specifically related to employee benefit plans or which only relate to these plans by imposing requirements inconsistent with ERISA. Nor can we conclude that the Wisconsin fair employment law, which would regulate certain "terms and conditions" of welfare benefit plans, relates to such plans "only in the

---

**6.** This quotation represents one of many references in the legislative history supportive of expansive preemption. *See* 425 F.Supp. at 1298–1300.

most remote and peripheral manner." *AT&T v. Merry*, 592 F.2d 118, 121 (2d Cir. 1979); *Stone v. Stone*, 450 F.Supp. 919, 932 (N.D.Cal.1978). A fair reading of the statute and the legislative history requires the conclusion that this Wisconsin statute "relates" to employee benefit plans unless otherwise excepted. This conclusion has been reached by several courts. *Pervel Industries, Inc. v. Connecticut Commission on Human Rights*, 468 F.Supp. 490 (D.Conn. 1978), aff'd., 603 F.2d 214 (2d Cir. 1979); *Mountain States Telephone & Telegraph Co. v. Commissioner of Labor and Industry*, Pens.Rep. (BNA), No. 210, at D–1 (D.Mont., Oct. 16, 1978); *Goodyear Tire & Rubber Co. v. DILHR*, 273 N.W.2d 786 (Wis.Ct.App. 1978).

The Second Circuit, in *AT&T v. Merry*, found that in some circumstances it is appropriate to imply congressional exceptions to ERISA preemption. In *Merry*, the court found that a state court judgment ordering the garnishment of an employee's pension income to satisfy a divorce obligation was not preempted by ERISA.[7] The court premised this exception on the tradition of federal deference to state regulation on family law, the Congressional concern manifested in ERISA to maintain the well-being of an employee's family as well as the employee, and the federal policy, manifested in other Congressional statutes, of enforcing support obligations. A similar result was reached in the lower court decisions in *Stone v. Stone*, 450 F.Supp. 919 (N.D.Cal.1978) and *Cody v. Riecker*, 454 F.Supp. 22 (E.D.N.Y.1978). *But see Francis v. United Technologies Corp.*, 458 F.Supp. 84 (N.D.Cal.1978).

As the court in *Merry*, we believe that there is evidence outside section 514 of ERISA revealing a congressional intent to preserve the application of state fair employ-

ment laws in general, and pregnancy disability laws in particular. We find, however, that this intention to except state fair employment laws from preemption need not be implied.[8] Instead, we rely on this evidence of intent to conclude that the preemption of state fair employment laws would operate to "alter, amend, modify, invalidate, impair or supersede" another federal "law, rule or regulation" in contravention of an express exception in section 514 of ERISA. 29 U.S.C. § 1144(d).

Two cases addressing this issue have concluded that Title VII is not impaired in contravention of ERISA by the displacement of state fair employment laws. *Mountain State Telephone & Telegraph Co. v. Commissioner of Labor and Industry*, Pens.Rep. (BNA), No. 210, at D–1 (D.Mont. Oct. 16, 1978); *Pervel Industries, Inc. v. Connecticut Commission on Human Rights*, 468 F.Supp. 490 (D.Conn.1978), aff'd 603 F.2d 214 (2d Cir. 1979). While it is true that the Equal Economic Opportunities Commission will still be able to enforce the federal prohibitions against employment discrimination contained in Title VII, these decisions construe too narrowly the nature of the *federal* scheme embodied in Title VII.

Preemption of state fair employment laws would at a minimum "alter," and probably "impair," the Congressional scheme for preventing and penalizing employment discrimination in the administration of welfare benefit plans in contravention of section 514(d). This conclusion derives support from a variety of sources: the provisions and legislative history of Title VII, the legislative history of ERISA, and the legislative history of the recently enacted federal pregnancy disability amendments to Title VII.[9] Turning first to Title VII itself, it is

---

7. The issue presented in *Merry* is particularly difficult because section 206(d)(1), 29 U.S.C. § 1056(d)(1), prohibits the involuntary assignment or alienation of pension benefits.

8. We express no opinion on when it might be appropriate to imply exceptions beyond those specifically enumerated in section 514.

9. In determining whether a particular statute contemplates preemption, the Supreme Court has frequently relied on Congressional intent expressed in other statutes to aid in that determination. *See New York Telephone Co. v. New York State Department of Labor,* —— U.S. ——, ——, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979); *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978).

clear that the federal scheme embodied in its laws, rules and regulations contemplates and encourages enforcement of state fair employment statutes as an integral component of the federal statutory framework. State laws are specifically preserved in two sections of Title VII and Title XI, section 708, 42 U.S.C. § 2000e–7, and section 1104, 42 U.S.C. § 2000h–4.[10]

Congress also designed an enforcement system premised on the enforcement and preservation of state fair employment laws. Federal agency action is deferred until a state has had an initial opportunity to remedy the employment discrimination charged. *See* 42 U.S.C. §§ 2000e–5(c), (d), (e). Further, under § 2000e–5(b) the EEOC must "accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law" in determining whether there is reasonable cause to believe a discrimination charge. To preempt the application of state fair employment laws to employee benefit plans would also cause a regulatory void as to employers not subject to Title VII but operating plans covered by ERISA.

These provisions illustrate that Title VII was "designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1020, 37 L.Ed.2d 147 (1974). The Supreme Court in *Gardner-Denver* emphasized the role of state laws in the federal scheme. "[L]egislative enactments in this area have long evinced a general intent to accord parallel or overlapping remedies against discrimination. In

the Civil Rights Act of 1964, . . . Congress indicated that it considered the policy against discrimination to be of the 'highest priority.' . . . Consistent with this view, Title VII provides for consideration of employment-discrimination claims in several forums. . . ." *Id.* at 47, 94 S.Ct. at 1019.

The legislative history of Title VII also emphasizes the coordination with and utilization of state fair employment laws. Senator Humphrey explained that the Act "afforded every opportunity" to states to remedy discrimination and that Title VII could properly be characterized as a "States responsibility bill." 110 Cong.Rec. 122724–25 (1964). The intention to preserve and utilize state fair employment laws manifested in Title VII is persuasive evidence that Congress did not intend to disrupt this scheme in the context of employee benefit plans.

The legislative history of ERISA also provides support for the conclusion that section 514(d), preserving federal law, should be construed to preclude preemption of state fair employment laws.[11] Senator Mondale and Representative Abzug sought to include in ERISA provisions prohibiting discrimination in the administration of welfare benefit plans. Senator Williams assured Senator Mondale that such an amendment would be unnecessary and might undermine federal antidiscrimination efforts, stating: "I believe that . . . centralized administration of nondiscrimination in employment must be maintained. And I believe this can be done by the Equal Employment Opportunities Commission under terms of existing law." 119 Cong.Rec. 30409 (1973). Representative Dent reiterat-

---

**10.** Section 708 provides:
 Nothing in this title [VII] shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this title.
 Section 1104 provides:
 Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof.

**11.** This preemption analysis might well be altered if the particular state employment law presumably preserved by 514(d) actually conflicted with the terms of ERISA. It would of course be a question of intent.

ed in the House that discrimination could best be prohibited "under terms of existing law." 120 Cong.Rec. 4726 (1974). On this basis, ERISA was not amended to prohibit discrimination.

■ Thus Congress expressed an intention to preserve the "terms of existing law" in the field of employment discrimination. In view of the pervasive role of the states under Title VII, we conclude that "existing law" included state fair employment laws. Senator Williams's emphasis on centralizing enforcement in the EEOC should properly be interpreted as an attempt to prevent competing authority in other federal agencies and not as an intent to limit the role of the states since the EEOC itself purposefully utilizes the states.[12] In fact, the EEOC has appeared in this case as an amicus curiae to urge the preservation of state fair employment laws. As the Supreme Court has recently noted, the amicus position of an agency charged with the principal enforcement of an Act should be carefully considered. *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.,* — U.S. ——, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979).

The history of the recently enacted Pregnancy Disability Act, 92 Stat. 2076, P.L. 95–555, also suggests the propriety of this conclusion. The statute amends Title VII to prevent discrimination in granting disability benefits to pregnant women. The Senate Report states that the existing provisions of Title VII preserving state law would permit the states with laws prohibiting pregnancy-based discrimination to "continue . . . to enforce their state laws if this bill were enacted." S.Rep.No. 5–331, 95th Cong., 1st Sess. 3 n.1 (1977). This statement is particularly significant since the major application of laws prohibiting

pregnancy discrimination is in the context of employee benefit plans. To preempt such laws under ERISA as they "relate" to employee benefit plans would certainly vitiate this Congressional statement that the states may continue to enforce such laws.

Similar authority appears in the House Report to the bill. The extent to which the act would impose a new financial burden on employers was a central issue surrounding passage of the bill. The report concludes that the financial impact would be minimal since many employers were already required by state law to treat pregnancy similar to other disabilities. The report concludes:

> At least 22 States, including the most populous States, now mandate some form of pregnancy disability coverage . . . The significance of this State coverage for H.R. 6075 [PL 95–555] is manifold: First, many employers are *already* under a State law obligation to provide benefits to pregnancy disabled workers. Passage of the bill thus has little or no economic impact on such employers. Second, employers who operate in several states face different requirements depending on the State; likewise, the rights of pregnant employees depend on the laws of the State in which they are employed.

H.Rep.No.85–948, 95th Cong., 2d Sess. at 11 (1978), U.S.Code Cong. & Admin.News 1978, pp. 4749, 4759 (emphasis added.) For what it is worth, it is clear that Congress passed pregnancy disability legislation with the assumption that state pregnancy disability laws were in full effect. We construe this as further evidence that state fair employment laws were considered to be fully embedded in the Title VII scheme for eradicating employment discrimination.[13]

---

**12.** The EEOC's guidelines illustrate the degree of state and federal coordination in the prevention of employment discrimination. Section 5.2 of the EEOC Compliance Manual describes discrimination charges received by the state and federal agencies as a "common workload." The section states it is the policy of the EEOC to "striv[e] for an integrated charge processing system" with the states and allows for funding to the states to further shared administration. Despite the EEOC's own use of state agen-

cies, the district court in *Pervel, supra,* found that an intent to centralize federal antidiscrimination efforts in the EEOC was inconsistent with inferring an intent to preserve state law.

**13.** The second circuit's brief affirmance of *Pervel Industries, supra,* infers that state fair employment laws were preempted by ERISA but were somehow reinstated by the passage of the federal pregnancy disability act. The court states:

■ Although some authorities have suggested that state fair employment laws are preempted,[14] we join the authorities concluding that the balance of the evidence suggests that Congress did not intend to preempt state fair employment laws since . such preemption would "alter, amend, modify . . . [or] impair" the federal framework for prohibiting employment discrimination. *See, Goodyear Tire & Rubber Company v. Department of Industry, Labor and Human Relations,* 273 N.W.2d 786, No. 77–650 (Wis.Ct.App., Nov. 22, 1978); *Liberty Mutual Insurance Co. v. State Division of Human Rights,* 61 A.D.2d 822, 402 N.Y.S.2d 218 (App.Div.1978). *Cf. Wadsworth v. Whaland,* 562 F.2d 70 (1st Cir. 1977), *cert. denied,* 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978).[15]

The judgment is affirmed.

---

This case arose before the amendment of Title VII in October 1978 by the Pregnancy Disability Act. . . . At that time state statutes, except those specifically excluded, were preempted by ERISA "insofar as they may . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). 603 F.2d 214.

Similarly confusing is Senator Javits's explanation of a new bill proposing amendments of the ERISA preemption provisions. The bill, S. 209, reprinted in 125 Cong.Rec. 560 (daily ed. Jan. 24, 1979), broadens the preemption exceptions. Senator Javits stated in the Senate, "Our bill does not address State sex discrimination laws . . . because passage of the pregnancy sex discrimination amendments, . . . appears to have mooted the issue of *preemption of State laws requiring disability plans to cover pregnancy-related leave.*" *Id.* at 575.

We are unaware of any provision of the Pregnancy Disability Act designed to amend ERISA. We rely on the Act and its history only to demonstrate the Congressional view of the States' role in the Title VII scheme. We do not think the Pregnancy Disability Act in any way modifies the preemption provisions of ERISA— it only serves to clarify the application of the 514(d) exception.

**14.** *See* cases cited supra at 10. Statements of Senators Williams and Javits examining the effect of ERISA preemption on state age discrimination statutes also support the view that state fair employment laws are preempted:

Mr. JAVITS. Finally, Mr. President, it is understood that just as these age discrimination amendments do not interfere with ERISA, State age discrimination in employment laws also are not to interfere with ERISA. The ADEA itself, as pointed out in the Senate report, does not preempt such State age discrimination laws. However, there should be no question that the preemption rules of section 514(a) of ERISA shall be determinative regarding the preemption of State age discrimination laws which directly or indirectly establish requirements relating to employee benefit plans. ERISA's preemption of State age discrimination laws shall be determined without regard to section 514(d) of ERISA or the fact that the ADEA does not itself preempt State law.

Mr. WILLIAMS. I concur in my friend's observations as they accurately state the controlling principles of law in this regard. *Federal law will preempt State age discrimination statutes only to the extent that those laws relate to an employee benefit plan described in section 4(a) of ERISA and are not exempt under section 4(b) of ERISA.* 124 Cong.Rec. S4451 (daily ed. March 23, 1978), as corrected, 124 Cong.Rec. S4767 (daily ed. April 4, 1978) (emphasis added).

However, Senator Javits, reporting to the Senate committee overseeing ERISA, stated that ERISA preemption "may have gone further than desirable" since state statutes regulating health care service plans were found preempted in judicial decisions. Senator Javits expressed concern that "other areas of potential conflict" might include the preemption of state fair employment laws. Senate Committee on Human Resources, 95th Cong., 1st Sess., Oversight of ERISA at 61 (1977). *See also* Senator Javits's most recent preemption observations in note 13 *supra.*

**15.** In *Wadsworth,* the First Circuit found that the McCarran-Ferguson Act policy of preserving state regulation of insurance is impliedly "reaffirmed" by section 514(d) of ERISA. 562 F.2d at 78. We note however that the preservation language in the McCarran Act is broader than the preservation language incorporated in Title VII. *Compare* 15 U.S.C. § 1012 *with* 42 U.S.C. § 2000h–4.