Cheshire
No. 99-484

JOHN MARSHALL & a.

v.

KEENE STATE COLLEGE

November 21, 2001

*James F. Allmendinger*, of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the plaintiffs.

*Nelson, Kinder, Mosseau & Saturley, PC*, of Manchester (*William C. Saturley* and *David R. DeVeau* on the brief, and *Mr. Saturley* orally), for the defendant.

NADEAU, J. The plaintiffs, John Marshall and the Keene State College Education Association, NEA-NH (the association), appeal orders by the Superior Court (*Brennan*, J.) on a motion to dismiss and by the Superior Court (*Mangones*, J.) on cross-motions for summary judgment. The court upheld an arbitrator's decision that a lifetime cap on mental health benefits in the University System of New Hampshire's self-funded employee benefit plan did not violate the parties' collective bargaining agreement (CBA). We affirm.

The following facts are recited in the decision of either the trial court or arbitrator, or appear in the record. Marshall, a professor at Keene State College (KSC), suffered from depression requiring outpatient treatment and medication. He was insured under a medical benefits plan provided by KSC, which, in turn, is self-insured. The plan contains an annual cap on outpatient mental health benefits of $3,000 and a lifetime cap of $10,000. Inpatient mental health treatment and treatment for other illnesses are not subject to the caps.

After being informed that he had reached the lifetime cap on outpatient mental health benefits, Marshall filed a grievance against KSC on the ground that the cap violated RSA chapter 417-E (1998) and the prohibition on disability-based discrimination in the parties' CBA. The CBA provides that neither the college nor the association will discriminate against a faculty member on the basis of disability. It also provides that the college and the association will comply with applicable provisions of the Americans with Disabilities Act of 1992 (ADA). *See* 42 U.S.C.A. §§ 12101 *et seq.* (West 1995 & Supp. 2001).

The arbitrator ruled that the CBA had not been violated. Marshall petitioned the superior court to modify or vacate the arbitrator's award and for declaratory and injunctive relief. The superior court upheld the arbitrator's award and Marshall appealed.

■ Under RSA 542:8, an arbitration award may be modified or corrected for "plain mistake," which may be a mistake as to fact or law. *N.H. Ins. Co. v. Bell*, 121 N.H. 127, 129 (1981). "A plain mistake is an error that is apparent on the face of the record and which would have been corrected had it been called to the arbitrators' attention." *Merrill Lynch Futures v. Sands*, 143 N.H. 507, 509 (1999) (quotations omitted).

Marshall argues that the arbitrator's award is contrary to law. He abandoned his claims of error regarding the ADA, however, at oral argument. Thus, the only issues before us involve State law.

Marshall first argues that the arbitrator erred in finding RSA chapter 417-E inapplicable to KSC. RSA 417-E:1, II provides:

> Notwithstanding any other provision of law, each insurer that issues or renews any policy of group or blanket accident or health insurance and each nonprofit health service corporation under RSA 420-A and health maintenance organization under RSA 420-B providing benefits for disease or sickness in the state of New Hampshire shall provide benefits for treatment and diagnosis of certain biologically-based mental illnesses under the same terms and conditions and which are no less extensive than coverage provided for any other type of health care for physical illness.

KSC contends that RSA 417-E:1 does not apply to it because it is not an insurer and its self-funded benefits plan is not a group health insurance policy under New Hampshire law. Marshall, on the other hand, argues that because the term "insurer" is not defined in RSA 417-E:1, it should be given its ordinary meaning of "one who or that which insures," including a self-insurer. Marshall does not contend that KSC is a nonprofit health service corporation or a health maintenance organization.

> This court is the final arbiter of the meaning of a statute, as expressed in the words of the statute itself. We interpret statutes not in isolation, but in the context of the overall statutory scheme. Although we give undefined language its plain and ordinary meaning, we must keep in mind the intent of the legislation, which is determined by examining the construction of the statute as a whole, and not simply by examining isolated words and phrases found therein.

*Appeal of HCA Parkland Medical Ctr.*, 143 N.H. 92, 94 (1998) (quotations and citations omitted). The term "insurer" in RSA 417-E:1 is modified by the phrase "that issues or renews any policy of group or blanket accident or health insurance." RSA 417-E:1, II. There is no evidence in the record that KSC has ever issued such a policy. In fact, the arbitrator specifically found:

> [KSC] is not an insurance corporation licensed to transact health insurance. Second, it is not licensed to issue policies for insurance and third, it has never been subject to the regulatory

requirements, or filing of regulatory or licensing oversight of the Insurance Commission.

Third, it has not been required to file information or forms or requests for approval of rates for participation in its self-funding plan, all requirements for covered plans.

▪ Under the plain language of RSA 417-E:1 construed as a whole, KSC is not an insurer to which the statute applies. *Cf. Wadsworth v. Whaland,* 562 F.2d 70, 76 (1st Cir. 1977) (construing identical language in Laws 1976, chapter 57 as "specifically relat[ing] to insurers who issue certificates of insurance" and evincing "no intention ... to directly regulate employee welfare plans as insurers"), *cert. denied,* 435 U.S. 980 (1978). Thus, the arbitrator did not commit plain mistake in ruling that RSA chapter 417-E is inapplicable to KSC.

Marshall also argues that KSC's disparate treatment of mental, as opposed to physical, disabilities in its benefits plan violates RSA 417:4, VIII(b) (Supp. 2000), which declares certain discriminatory practices to be "unfair methods of competition and unfair and deceptive acts and practices in the business of insurance." RSA 417:4, VIII(b). KSC argues that Marshall failed to raise this claim in its initial grievance or before the arbitrator. The record before us shows no indication that this claim was presented to either the arbitrator or the trial court. Thus, it is not preserved and we decline to address it. *See Merrill Lynch Futures,* 143 N.H. at 511.

*Affirmed.*

DALIANIS, J., concurred; GROFF, O'NEILL and ARNOLD, JJ., superior court justices, specially assigned under RSA 490:3, concurred.