BROWN COMPANY, ABSORBENT
PRODUCTS DIVISION, a
corporation, Plaintiff,

v.

The DEPARTMENT OF INDUSTRY, LA-
BOR, AND HUMAN RELATIONS OF
the STATE OF WISCONSIN, Joseph
Noll,[1] Secretary of the Department, and
Merry Fran Tryon, Administrator of the
Equal Rights Division of said Depart-
ment, Defendants.

No. 77–C–29.

United States District Court,
W. D. Wisconsin.

Aug. 28, 1979.

Joseph A. Melli of Melli, Shiels, Walker &
Pease, S. C., Madison, Wis., and Edward B.
Miller of Pope, Ballard, Shepard & Fowle,
Chicago, Ill., of counsel, for plaintiff.

Bronson C. La Follette, Atty. Gen. of
State of Wis. by David C. Rice, Asst. Atty.
Gen., Madison, Wis., for defendants.

## OPINION

JAMES E. DOYLE, Jr., Chief Judge.

This is a civil action in which the plaintiff
seeks to enjoin various officers of the State
of Wisconsin from exercising jurisdiction
under the Wisconsin Fair Employment Act
(WFEA), Wis.Stat. §§ 111.31–111.37, over a
complaint alleging that plaintiff's disability
benefits plan discriminates on the basis of
sex. The case is before the court on plain-
tiff's motion for summary judgment. The
issue presented by the motion is whether
application of the WFEA to plaintiff's dis-
ability benefits plan is preempted by the
Employee Retirement Income Security Act
(ERISA), 29 U.S.C. §§ 1001–1381, or the
National Labor Relations Act (NLRA), as
amended, 29 U.S.C. §§ 151 *et seq.*

Based on the entire record herein, I find
as fact the matters set forth in the section
below entitled "Facts."

### Facts

Plaintiff manufactures sanitary paper
and related products at its plant in Eau

---

1. Pursuant to Rule 25(d)(1), Federal Rules of
Civil Procedure, the court has substituted de-
fendants Noll and Tryon for their predecessors
in office, Zel Rice and Nancy Newbury.

Claire, Wisconsin. Plaintiff is an administrative division of the Brown Company, a corporation organized under the laws of Delaware. The home offices of the Brown Company are located in Pasadena, California. The Brown Company makes purchases and sales in interstate commerce of a value well in excess of one million dollars annually, and employs approximately 9,000 employees at its facilities in twenty-two states.

Defendants are the state administrative agency and individual state officials charged with enforcement of the WFEA.

Employees at plaintiff's Eau Claire plant are represented for purposes of collective bargaining by Local 42, United Paperworkers International Union. At all times pertinent to this action, plaintiff and Local 42 have been subject to the terms of the NLRA. On July 15, 1974, plaintiff and Local 42 entered into a collective bargaining agreement which provided benefits in the event of disability.

The disability benefits plan operates on a self-insured basis with plaintiff providing the money due to employees. In return for an annual administrative fee, the plan is administered by the Employers Mutual Liability Insurance Company of Wisconsin, which disburses payments due to employees under the terms of the plan. If at any time the amount on deposit with Employers Mutual Life is insufficient to cover amounts due to employees, the plaintiff must deposit an amount sufficient to satisfy all valid employee claims. The plan is subject to the terms of ERISA.

According to its terms of coverage, the disability benefits plan does not provide for benefits during a normal period of pregnancy of an employee.

At all times pertinent to this action, Mary Louise Nesja was employed by plaintiff, was represented by Local 42, and was eligible for any benefits provided under the plan described above. Nesja gave birth to a baby on or about July 4, 1975, after a normal period of pregnancy. She applied for disability benefits for this period of pregnancy, but received none.

On or about August 20, 1975, Nesja filed a complaint against plaintiff and Local 42 with defendant Department of Industry, Labor and Human Relations (DILHR). She alleged that she had suffered discrimination on the basis of her sex in violation of the WFEA because she had not been provided with disability benefits for her pregnancy.

On or about November 17, 1976, defendant DILHR and its Equal Rights Division issued a notice of hearing and complaint against plaintiff and Local 42. The hearing was to be held January 25, 1977, to determine whether the denial of benefits to Nesja during a period of pregnancy-related disability constituted a violation of the WFEA.

On or about January 14, 1977, plaintiff filed with defendant DILHR a motion to dismiss the proceeding on the grounds that state regulation of its disability plan was preempted by federal law. The motion was denied by defendant DILHR on or about January 18, 1977.

Plaintiff commenced this action on January 19, 1977.

## Opinion

### ERISA Preemption

The first issue presented by plaintiff's motion for summary judgment is whether application of the WFEA to its disability benefits plan is preempted by ERISA.

■ Following the briefing of this issue by the parties in this case, the United States Court of Appeals for the Seventh Circuit ruled in *Bucyrus-Erie Company v. The Department of Industry, Labor and Human Relations of the State of Wisconsin*, 599 F.2d 205 (7th Cir. 1979), that ERISA did not preempt application of the WFEA to an employer's sick leave plan which excluded pregnancy from its definition of "sickness." The ruling is dispositive of the issue here.

### NLRA Preemption

■ Plaintiff argues that the NLRA commits the determination of its terms and conditions of employment to the collective bargaining process, and that Wisconsin's regulation (and possible alteration) of its

collective bargaining agreement would restrict the freedom which Congress intended to provide the bargaining parties, and would destroy uniformity in the regulation of collective bargaining.

In exercising the power granted to it by the Commerce Clause, Congress is free to foreclose regulation of interstate commerce by the states. Whether it has chosen to do so in a particular statute is a question of Congressional intent. In some statutes, Congress declares expressly its intent to preempt state regulation; in the NLRA however, it does not. Such an intent may be implied, of course, by the NLRA. It had been customary to resolve a question of NLRA preemption according to the principles set forth in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1958). Under *Garmon*, the NLRA would be found to imply an intent to preempt state regulation if the activity regulated is arguably protected or prohibited by the NLRA, and is not a matter of "deeply rooted local concern." *Id.*, at 245–46, 79 S.Ct. 773. If the *Garmon* principles were applied here, it is possible that Wisconsin's prohibition of sex discrimination would be found to be a matter of "deeply rooted local concern." However, it is unnecessary to reach this question in view of the Supreme Court's preemption analysis in *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1977).

In *Malone*, an employer and a union negotiated a pension plan through collective bargaining under the NLRA. The plan provided that, in the event of its termination, the employer would be liable for pension payments up to a certain amount. Following the negotiation of the plan, the State of Minnesota enacted a pension law which imposed on pension plans a "funding charge" designed to protect pensioners in the event of a plan's termination. The Minnesota law required the employer to pay more than the amount determined by collective bargaining. The employer terminated the plan, and sought to enjoin the state from requiring him to pay more than the collective bargaining agreement required. The employer argued that the state law interfered with the right of free collective bargaining under the NLRA, and overrode the terms of an agreement arrived at in compliance with the requirements of the NLRA.

On the question of NLRA preemption, the Court looked not to the NLRA, but instead, to "a far more reliable indicium of congressional intent with respect to state authority to regulate pension plans"—the federal Welfare and Pension Plans Disclosure Act (the Disclosure Act), 29 U.S.C. § 301 *et seq.* (repealed 1975).

During the life of the pension plan, the Disclosure Act was the primary federal legislation applying to pension plans in private employment.[2] The Disclosure Act provided that it was not intended to relieve any person from liability under a present or future state law concerning the operation or administration of pension plans. 29 U.S.C. § 309(b). It also permitted states to enact more stringent disclosure requirements than its own, or otherwise to regulate pension plans. 29 U.S.C. § 309(a). The legislative history of the Disclosure Act revealed Congress' expectation that states would supplement the Act's disclosure requirements with other regulation of pension plans. It also revealed that Congress intended its disclosure requirements to apply to pension plans whether or not they were the product of collective bargaining.

Relying on these aspects of the Disclosure Act, the Court concluded (435 U.S., at 512, 98 S.Ct. at 1194):

. . . the 1958 Disclosure Act clearly anticipated a broad regulatory role for the States. In light of this history, we cannot hold that the [Minnesota] Pension Act is nevertheless implicitly pre-empted by the collective bargaining provisions of the NLRA. Congress could not have intended that bargained-for plans, which were among those that had given rise to the very problems that had so concerned

---

2. The Disclosure Act was repealed on January 1, 1975, by ERISA. 29 U.S.C. § 1031(a)(1).

Congress, were to be free from either state or federal regulations insofar as their substantive provisions were concerned.

From the ruling, it is clear that in resolving a claim of NLRA preemption, a court may look to another federal statute to determine which may impinge on terms of employment bargained under the NLRA.

I look, therefore, to the clearest expression of Congress' view toward state fair employment laws, Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* In Title VII, Congress prohibits discrimination on the basis of race, color, religion, sex, or national origin by employers (including state governments), employment agencies, and labor organizations. Prior to its passage, there existed little federal statutory protection against discrimination in employment; however, fair employment practice laws had been enacted in numerous states.

> Title VII provides:
>
> Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter. 42 U.S.C. § 2000e–7.

Besides permitting the states to enforce their own anti-discrimination laws, Congress deferred the enforcement procedures of Title VII to those provided by state laws. Section 706 of Title VII provides that no charge under Title VII shall be filed with the Equal Employment Opportunity Commission (EEOC) until sixty days after proceedings have been initiated under any applicable state fair employment law. 42 U.S.C. § 2000e–5(c). Other provisions of Title VII require the EEOC, in its probable cause determinations, to accord substantial weight to state agency findings, 42 U.S.C. § 2000e–8(b). From these provisions, it is clear that Congress anticipated extensive state involvement in the enforcement of equal employment opportunity. Nowhere in Title VII does Congress restrict that involvement to only those charges affecting intrastate commerce. And nowhere in Title VII does Congress indicate that collectively bargained terms of employment are to be immunized from its force.

I conclude, as did the Court in *Malone*, that Congress did not imply in the NLRA an intent to restrict the states from conducting the type of regulation which Title VII so clearly permits them to undertake.

Where, as here, the undisputed facts show that nonmoving parties are entitled to judgment, it is appropriate to enter judgment in their behalf. *Bowman v. United States Board of Parole*, 411 F.Supp. 329 (W.D.Wis.1974).

*Order*

It is ordered that plaintiff's motion for summary judgment is denied, and that summary judgment is granted in defendants' favor. This case is dismissed on its merits.