**WESTINGHOUSE ELECTRIC CORPORATION**

v.

**STATE OF MARYLAND COMMISSION ON HUMAN RELATIONS.**

Civ. A. No. M–80–2915.

United States District Court, D. Maryland.

June 29, 1981.

Bruce S. Harrison, Shawe & Rosenthal, Baltimore, Md., for plaintiff.

Henry B. Ford, Baltimore, Md., for defendant.

MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiff, Westinghouse Electric Corporation (Westinghouse), brought this ac-

tion pursuant to sections 502(a)(3) and (e)(1) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1132(a)(3) & (e)(1). In its complaint against the Maryland Commission on Human Relations (MCHR), Westinghouse seeks declaratory and injunctive relief with respect to the MCHR's application of section 16 and section 17 of *Md.Code Ann.* Art. 49B to Westinghouse's employee disability benefit plan. The sole issue presented by this case is whether these sections of Maryland's fair employment statute are preempted by section 514(a) of ERISA, 29 U.S.C. § 1144(a).

This case is presently before the court on cross-motions for summary judgment. There are no material facts in dispute, and both parties have submitted legal memoranda.[1] The court believes that oral argument, although requested, is not required. Local Rule 6(E). For the reasons set out below, the court holds that sections 16 and 17 of *Md. Code Ann.* Art. 49B are not preempted by ERISA. Consequently, the summary judgment motion of the MCHR will be granted.

## I. Overview of the Case

Westinghouse is a Pennsylvania corporation that does business and employs persons in Maryland, as well as throughout the United States. As a result of four administrative charges filed in March of 1978, the MCHR issued a "statement of charges" against Westinghouse in June of 1979, alleging that the company was in violation of *Md.Code Ann.* Art. 49B, § 17 because the Westinghouse Insurance Plan for Employees did not provide accident and sickness benefits for disabilities related to pregnancy while providing such benefits for other temporary disabilities. In all four cases the

hearing examiner found Westinghouse to be in violation of state law, and ordered the retroactive payment of disability benefits to all affected female employees. Westinghouse filed timely notices of appeal, and the four administrative cases are presently pending before an appeals board of the MCHR. The period of time relevant to this case is July 1, 1977 to April 29, 1979. The former date is the effective date of *Md. Code Ann.* Art. 49B, § 17. The latter date marks the effective date of the Pregnancy Disability Act of 1978, 42 U.S.C. § 2000e(k), which amended Title VII to "overrule" the Supreme Court's decision in *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). Westinghouse began to include benefits for pregnancy-related disabilities on April 29, 1979.

## II. ERISA: The Statutory Scheme

ERISA was enacted to cure what Congress viewed as abuses and inequities in the operation of employee benefit plans.[2] Intending to protect working men and women, Congress declared a "national public interest" in "the continued well-being and security of millions of employees and their dependents [who] are directly affected by these plans." Section 2(a), 29 U.S.C. § 1001(a). In furtherance of this goal, Title I of ERISA, administered and enforced by the Secretary of Labor, sets out a comprehensive regulatory scheme, including reporting and disclosure requirements,[3] participation and vesting standards,[4] funding requirements,[5] fiduciary responsibility regulations,[6] and criminal and civil enforcement provisions.[7] These provisions were designed to effectuate Congress' policy of "protect[ing] interstate commerce and the interests of participants in employee benefit

---

1. Paper Nos. 10, 12, 14 and 15.

2. For discussions of ERISA's substantive provisions, *see* S. Goldberg, *Pension Plans Under ERISA* (1976); Goodman & Stone, Exempt Compensation Arrangements Under ERISA, 28 *Cath.U.L.Rev.* 445 (1979); Comment, The Employee Retirement Income Security Act of 1974: Policies and Problems, 26 *Syracuse L.Rev.* 539 (1975).

3. 29 U.S.C. §§ 1021 to 1031.

4. *Id.* §§ 1051 to 1061.

5. *Id.* §§ 1081 to 1086.

6. *Id.* §§ 1101 to 1114.

7. *Id.* §§ 1131 to 1132.

plans and their beneficiaries." Section 2(b), 29 U.S.C. § 1001(b). *See Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361–62, 374–75, 100 S.Ct. 1723, 1726, 1732–33, 64 L.Ed.2d 354 (1980).

The parties are in agreement that the Westinghouse Insurance Plan for Employees is an "employee benefit plan" within the meaning of sections 3(1) and (3) and section 4(a) of ERISA, 29 U.S.C. §§ 1002(1) & (3), 1003(a). Further, the MCHR does not contend that the subject plan falls within one of the exceptions to coverage set out in section 4(b), 29 U.S.C. § 1003(b).[8]

Section 514(a) provides that ERISA's regulatory provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). The only state laws,[9] specifically excluded from the operation of this preemption language are those regulating insurance, banking or securities, or generally applicable criminal law. Section 514(b), 29 U.S.C. § 1144(b). Section 514(d) of ERISA, the "savings clause," however, provides as follows:

"Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law."

It is apparent that unless either impliedly excepted from the operation of section 514(a), or held to be within the reach of section 514(d), section 16 and section 17 of *Md.Code Ann.* Art. 49B are preempted by ERISA. These statutory provisions plainly "relate" to employee benefit plans that are regulated by the Act.[10]

Three lines of analysis have developed in the federal courts concerning the proper

---

**8.** The only provision of § 4(b) that is arguably applicable to this case is § 4(b)(3), which excepts from ERISA's coverage plans "maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws." 29 U.S.C. § 1003(b)(3). Although *Md.Code Ann.* Art. 49B, § 17 does require pregnancy disability benefits to be afforded employees "under any health or temporary disability insurance or sick leave plan available in connection with employment," it is not the purpose of § 17 to ensure compliance with state disability insurance or workmen's compensation laws. Rather, the purpose of § 17, as well as § 16, is to preclude sexually discriminatory employment practices. In any event, the MCHR does not contend the § 4(b)(3) exemption to be applicable to this case.

**9.** For the purposes of section 514(a):

"(1) The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

(2) The term 'State' includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter."

§ 514(c)(1) and (2), 29 U.S.C. § 1144(c)(1) and (2).

**10.** Section 17 of *Md.Code Ann.* Art. 49B provides as follows:

"Disabilities caused or contributed to by pregnancy or childbirth, are temporary disabilities for all job-related purposes, and shall be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. However, no employer is required to provide temporary disability insurance or a sick leave plan for more than six weeks benefits for a normal childbirth or pregnancy. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities subject to the provisions of this section."

Section 16 of *Md. Code Ann.* Art. 49B is a general statute prohibiting, among other things, sex discrimination in employment. The MCHR considers § 16 to require the inclusion of pregnancy benefits in accordance with the specific language of § 17. Accordingly, both sections "relate" to plans covered by ERISA within the meaning of § 514(a).

interpretation of section 514(a) and section 514(d), and the preemption of state law by ERISA. The first, typified by then District Judge Newman's decision in *Pervel Industries, Inc. v. State of Connecticut Commission on Human Rights and Opportunities*, 468 F.Supp. 490 (D.Conn.1978), *aff'd* 603 F.2d 214 (2d Cir. 1979), *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980), interprets section 514(a) broadly and holds preempted all state fair employment laws as applied to federally regulated employee benefit plans. An alternative analysis, employed by the Seventh Circuit in *Bucyrus-Erie Co. v. Department of Industry, Labor and Human Relations*, 599 F.2d 205 (7th Cir. 1979), *cert. denied*, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980), adopts the so-called "double savings clause" theory to preserve the application of state fair employment laws to federally regulated plans. A third theory has been applied to save state family laws from preemption by ERISA. This "implied exception" rationale was sanctioned in *American Tel. & Tel. Co. v. Merry*, 592 F.2d 118 (2d Cir. 1979), and in *Stone v. Stone*, 450 F.Supp. 919 (N.D.Cal. 1978), *aff'd*, 632 F.2d 740 (9th Cir. 1980). *See also Provience v. Valley Clerks Trust Fund*, 509 F.Supp. 388, 390–91 (E.D.Cal. 1981).[11]

## III. Discussion

At first blush, the plain language of section 514(a) would seem to be dispositive of the question presented in this case. According to Westinghouse, that section evidences an explicit congressional intention to preempt all state laws that in any way "relate" to covered employee benefit plans. Nevertheless, despite the surface appeal of that approach, the court is constrained to engage in a more probing analysis for several reasons.

■ First, preemption implicates important federal-state relationships. In enacting section 16 and section 17 of *Md.Code Ann.* Art. 49B, Maryland engaged in a legitimate exercise of its police powers in an area in which it has a strong local interest. *See Colorado Anti-Discrimination Commission v. Continental Air Lines, Inc.*, 372 U.S. 714, 721–22, 83 S.Ct. 1022, 1025–26, 10 L.Ed.2d 84 (1963). Consequently, "when a State's exercise of its police power is challenged under the Supremacy Clause, 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978), *quoting Rice v. Sante Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). As Mr. Justice Marshall noted in *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), "[t]his assumption provides assurance that 'the federal-state balance' will not be disturbed unintentionally by Congress or unnecessarily by the courts." 430 U.S. at 525, 97 S.Ct. at 1309 (citation omitted). Thus, as is usually the case, "[t]he purpose of Congress is the ultimate touchstone." *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963). *See Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1190, 55 L.Ed.2d 443 (1978) (plurality opinion).

It is also apparent that, if construed broadly, section 514(a) of ERISA might conflict with another piece of important social legislation, the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* It is the meshing of these federal statutes that gives rise to the "double savings clause" theory.

■ The scheme embodied in the Civil Rights Act of 1964 contemplates and encourages the enforcement of state fair employment laws as an essential component of the federal statutory framework. *See, e. g., New York Gaslight Club v. Carey*, 447 U.S. 54, 67, 100 S.Ct. 2024, 2032, 64 L.Ed.2d 723 (1980); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974). State fair em-

---

11. One court has applied the "implied exception" rationale to save a state fair employment law from preemption by ERISA. *See Gast v. Oregon*, 36 Or.App. 441, 582 P.2d 12 (Ore.Ct. App.1978).

ployment laws are specifically preserved by two sections of the Civil Rights Act.[12] Section 708 of Title VII provides:

"Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter."

42 U.S.C. § 2000e–7.

Section 1104 of Title XI provides:

"Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof."

42 U.S.C. § 2000h–4.

Accordingly, proponents of the "double savings clause" theory contend that (1) since section 514(d) of ERISA preserves nonconflicting federal law, and (2) the Civil Rights Act of 1964 both permits and contemplates the enforcement of state law, then (3) state fair employment laws, being an essential component of the federal scheme, are preserved through the savings clauses of the federal statutes.

The customary starting point when construing a statute is the language itself.

*Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978). However, it is important in a case such as this to go beyond the plain words of section 514(a) and consider the purposes of the implicated statute as well as its legislative history.[13]

Two aspects of ERISA's legislative history appear to favor the position urged by Westinghouse.[14] First, the original House and Senate bills contained limited preemption provisions, superseding only state regulation of the subject matter expressly covered in each version. H.R. 2, §§ 514(a), 699(a), 93d Cong., 2d Sess. (1974), *reprinted in* 120 Cong.Rec. 4742, 5002 (1974). This preemption approach was rejected by the conference committee, which added the more broadly worded language of section 514(a). H.R.Conf.Rep.No.1280, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 5038, 5162. In addition, Congressional remarks generally describe ERISA's preemption provision in sweeping terms. *See, e. g.,* 120 Cong.Rec. 29197 (1974) (remarks of Rep. Dent); *id.* at 29933 (remarks of Sen. Williams); *id.* at 29942 (remarks of Sen. Javits). These factors persuaded Judge Newman in *Pervel* to hold that Connecticut's fair employment law was preempted, insofar as it required the inclusion of pregnancy benefits in employee benefit plans. The court stated:

"The broad sweep of this language and the deliberate Congressional intention to accomplish broad preemption has recently been reviewed by this Court. *National Carriers' Conference Committee v. Heffernan*, 454 F.Supp. 914 (D.Conn.1978). It was there pointed out that Congress

12. Also indicative of the importance Congress placed on the enforcement of state fair employment laws is the deferral system set out in § 706, 42 U.S.C. § 2000e–5. *See, e. g., Mohasco Corp. v. Silver*, 447 U.S. 807, 816–17, 100 S.Ct. 2486, 2492, 65 L.Ed.2d 532 (1980); *Love v. Pullman Co.*, 404 U.S. 522, 524–26, 92 S.Ct. 616, 617–18, 30 L.Ed.2d 679 (1972); *Hall v. Board of County Commissioners of Frederick County*, 509 F.Supp. 841, 844–46 (D.Md.1981).

13. None of the better reasoned cases discussing preemption under ERISA rely solely on the language of § 514(a).

14. For extensive discussions of the legislative history of ERISA's preemption provision, *see Hewlett-Packard Co. v. Barnes*, 425 F.Supp. 1294 (N.D.Cal.1977), *aff'd*, 571 F.2d 502 (9th Cir. 1978); *Turza v. Holloway*, Preemption of State Laws Under the Employee Retirement Income Security Act of 1974, *28 Cath.U.L.Rev.* 163 (1979); Hutchison & Ifshin, Federal Preemption of State Law Under the Employee Retirement Income Security Act of 1974, 46 *U.Chi.L.Rev.* 23 (1978).

made a clear-cut decision not to identify various subjects on which state laws were to be preempted, but instead sought to avoid constant litigation over the scope of preemption by preempting, with certain specific exceptions, 'all' state laws insofar as they 'relate' to plans covered by ERISA. Plainly Connecticut's anti-discrimination law, legislating specifically on the subject of disability benefits, is a law that relates to an employee benefit plan."

468 F.Supp. at 492.

Judge Newman rejected the "double savings clause" argument as follows:

> "Section 514(d) of ERISA preserves *federal* law. Connecticut's anti-discrimination law does not become a federal law simply because Title VII preserves its validity as against a claim of preemption by Title VII. Nor is the textual argument significantly enhanced by focusing on § 514(b)'s requirement that ERISA should not be construed to 'impair' any law of the United States. Preemption of Conn.Gen.Stat. § 31–126(g) by ERISA does not impair any federal law. Title VII did not create new authority for state anti-discrimination laws; it simply left them where they were before the enactment of Title VII."

468 F.Supp. at 493 (emphasis in original).

Judge Newman also discounted ERISA's legislative history regarding the withholding of certain anti-discrimination amendments by Senator Mondale and Representative Abzug. For example, Senator Williams assured Senator Mondale that such an amendment would be unnecessary because non-discrimination in employment would be enforced by the Equal Employment Opportunity Commission (EEOC) "under terms of existing law." 119 Cong.Rec. 30409 (1973).

Judge Newman stressed that Senator Williams' remarks gave no assurance that state fair employment laws would be unaffected by ERISA. 468 F.Supp. at 493.[15]

In contrast with *Pervel*, the Seventh Circuit in *Bucyrus-Erie Co.* found merit in the "double savings clause" theory.[16] *Accord, Brown Co. v. Department of Industry*, 476 F.Supp. 209, 210 (W.D.Wis.1979). After rejecting the "implied exception" approach of *American Tel. & Tel. Co. v. Merry*, and *Stone v. Stone*, the Seventh Circuit panel held as follows:

> "Preemption of state fair employment laws would at a minimum 'alter,' and probably 'impair,' the Congressional scheme for preventing and penalizing employment discrimination in the administration of welfare benefit plans in contravention of section 514(d)."

599 F.2d at 210.

In reaching this conclusion, the court relied on the provisions and legislative history of Title VII, the legislative history of ERISA, and the legislative history of the Pregnancy Disability Act of 1978. The court first noted that Title VII was "designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination." 599 F.2d at 211, quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. at 48–49, 94 S.Ct. at 1019–20. According to the Seventh Circuit, not including state fair employment laws within the scope of section 514(d) would both impair Title VII's enforcement system, and "cause a regulatory void as to employers not subject to Title VII but operating plans covered by ERISA." 599 F.2d at 211.

The court next relied on the exchange between Senator Mondale and Senator Williams, 119 Cong.Rec. 30409 (1973), as well as

---

**15.** Judge Newman also found evidence of Congressional intent to preempt state fair employment laws in the Senate debate concerning the Age Discrimination in Employment Act Amendments of 1978 (ADEA), 29 U.S.C. § 623 *et seq.*, 468 F.Supp. at 493 n. 2. Both Senator Javits and Senator Williams agreed that although the ADEA did not itself displace state age discrimination laws, the preemption of such laws would be determined under ERISA

"without regard to section 514(d)." 124 Cong. Rec. S4451 (daily ed. March 23, 1978).

**16.** The court noted that the EEOC appeared as *amicus curiae* to urge the preservation of state fair employment laws, and the court accorded due weight to the EEOC's views. *See Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 14, 99 S.Ct. 1551, 1559–60, 60 L.Ed.2d 1 (1979).

the remarks of Representative Dent, 120 Cong.Rec. 4726 (1974), as indicating that it was Congress' intent when enacting ERISA to preserve the *federal scheme* prohibiting employment discrimination. The court stated:

> "Thus Congress expressed an intention to preserve the 'terms of existing law' in the field of employment discrimination. In view of the pervasive role of the states under Title VII, we conclude that 'existing law' included state fair employment laws. Senator Williams's emphasis on centralizing enforcement in the EEOC should properly be interpreted as an attempt to prevent competing authority in other federal agencies and not as an intent to limit the role of the states since the EEOC itself purposefully utilizes the states."

599 F.2d at 212 (footnote omitted).

Finally, the court found that the legislative history of the Pregnancy Disability Act of 1978 established that Congress did not then understand state fair employment laws, mandating that pregnancy disabilities be treated the same as other disabilities, for the purpose of employee benefit plans, to be preempted by section 514(a) of ERISA.[17] The Senate report accompanying the bill indicated that the states with laws prohibiting pregnancy-based discrimination could "continue . . . to enforce their state laws if [the] bill were enacted." S.Rep.No.331, 95th Cong. 1st Sess. 3 n. 1 (1977). The court found that language:

> "[P]articularly significant since the major application of laws prohibiting pregnancy discrimination is in the context of employee benefit plans. To preempt such laws under ERISA . . . would certainly vitiate the Congressional statement that the states may continue to enforce such laws."

599 F.2d at 212.

The court further noted that the House report accompanying the bill also assumed that state fair employment laws were in full force and effect with respect to pregnancy disability benefits. The House report stated:

> "The requirement of fringe benefit coverage of workers disabled by pregnancy and related conditions takes two basic forms under State law: (1) a provision for coverage in some form under a State disability insurance law or (2) a requirement of equal treatment of pregnant workers under a State fair employment practices law. The requirements in (2) are in some States explicitly set forth in the State FEP law or in other States may result from agency interpretations (either in regulations or agency opinions) or State court decisions. At least 22 States, including the most populous States, now mandate some form of pregnancy disability coverage through one of the mechanisms described above. The significance of this State coverage for H.R. 6075 is manifold: First, many employers are *already* under a State law obligation to provide benefits to pregnant disabled workers. Passage of the bill thus has little or no economic impact on such employers. Second, employers who operate in several States face different requirements depending on the State; likewise, the rights of pregnant employees depend on the laws of the State in which they are employed.

> The following six States, as well as the District of Columbia, specifically include pregnancy in their Fair Employment Practices laws: Alaska, Connecticut, Maryland, Minnesota, Oregon, and Montana.

> Twelve additional States have, since *Gilbert*, interpreted the prohibitions on sex discrimination in their State's FEP laws to require equal treatment of pregnant workers. In three instances, State courts have so interpreted the State FEP laws (New York, Pennsylvania, Wisconsin); in at least nine additional States,

---

17. The legislative history of the Pregnancy Disability Act also indicates that the Supreme Court's interpretation of Title VII in *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), was regarded in Congress as erroneous. H.R.Rep.No.948, 95th Cong. 2d Sess. 2–4, *reprinted in* [1978] U.S. Code Cong. & Ad.News 4749, 4750–52.

the State enforcement agency has so construed the State law. Those States are: Illinois, Indiana, Iowa, Kansas, Massachusetts, Michigan, Missouri, South Dakota, and Washington." H.R.Rep.No.948, 95th Cong., 2d Sess. 10–11, *reprinted in* [1978] U.S.Code Cong. & Ad. News 4749, 4758–59 (emphasis in original).

A majority of the state courts that have addressed the issue of whether ERISA preempts the application of state fair employment laws to employee benefit plans have employed reasoning similar to that outlined in *Bucyrus-Erie Co.*, and have held their respective state laws to be preserved through section 514(d). *See, e. g., Mountain States Tel. & Tel. Co. v. Commissioner of Labor & Industry*, Mont., 608 P.2d 1047, 1050–58 (1979), *appeal dismissed*, 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980); *Minnesota Mining & Mfg. Co. v. State of Minnesota*, Minn., 289 N.W.2d 396, 400–01 (1979), *appeal dismissed*, 444 U.S. 1041, 100 S.Ct. 725, 62 L.Ed.2d 726 (1980); *Lukus v. Westinghouse Electric Corp.*, —— Pa.Super. ——, 419 A.2d 431, 436–45 (1980); *Illinois Bell Tel. Co. v. Fair Employment Practices Commission*, 68 Ill.App.3d 829, 25 Ill.Dec. 328, 386 N.E.2d 599 (1979); *rev'd on other grounds*, 81 Ill.2d 136, 41 Ill.Dec. 41, 407 N.E.2d 539 (1980); *Goodyear Tire & Rubber Co. v. Department of Industry, Labor & Human Relations*, 87 Wis.2d 56, 273 N.W.2d 786, 793–97 (1978); *Liberty Mutual Insurance Co. v. State Division of Human Rights*, 61 App.Div.2d 822, 402 N.Y.S.2d 218, *appeal denied*, 44 N.Y.2d 644, 405 N.Y.S.2d 1028, 377 N.E.2d 488 (1978). *Cf. Gast v. Oregon*, 36 Or.App. 441, 585 P.2d 12, 20–21 (1978) (term "relate" in § 514(a) not intended by Congress to apply to state fair employment laws). *But see International Ladies' Garment Workers' Union v. Human Relations Commission*, 53 Pa.Cmwlth. 229, 417 A.2d 1279, 1281–84 (1980); *American Chain & Cable Co., Inc. v. Iowa Civil Rights Commission*, No. CE 6–2938 (Polk District Cnty. Ct., Iowa, Jan. 28, 1978) (unpublished).

The Supreme Court has never squarely addressed the issue of whether ERISA preempts state fair employment laws requiring employee benefit plans to treat disabilities resulting from pregnancy the same as other disabilities. However, the Court's summary dismissal of two appeals from state supreme courts provides some guidance.

In *Mountain States*, the Supreme Court of Montana considered whether section 514(a) of ERISA preempted the Montana Maternity Leave Act, insofar as it applied to Mountain Bell's disability benefits plan. The Montana statute made it unlawful for an employer to deny an employee disability benefits when the disability resulted from pregnancy. The company's plan allowed for maternity leave but provided no benefits. In reversing the state trial court, the Supreme Court of Montana adopted the "double savings clause" approach and held the Montana statute not to be preempted by ERISA. The Supreme Court dismissed Mountain Bell's appeal for want of a substantial federal question. 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980).

Similarly, in *Minnesota Mining*, the Supreme Court of Minnesota rejected a challenge to that state's fair employment law expressly requiring employers to treat pregnancy disabilities the same as other disabilities for the purpose of employee benefit plans. That court also adopted the "double savings clause" approach and held that section 514(a) of ERISA did not preempt the state law. The company's appeal to the Supreme Court was dismissed for want of a substantial federal question. 444 U.S. 1041, 100 S.Ct. 725, 62 L.Ed.2d 726 (1980).

A summary dismissal by the Supreme Court of an appeal from a state court for want of a substantial federal question, when the federal question is properly presented and is within the Court's appellate jurisdiction under 28 U.S.C. § 1257(2), operates as a decision on the merits. *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). *See, e. g., Carpenters Pension Trust v. Kronschnable*, 632 F.2d 745, 747–48 (9th Cir. 1980); *Hogge v. Johnson*, 526 F.2d 833, 835 (4th Cir. 1975), *cert. denied*, 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1221 (1976). The

Supreme Court has commented on the scope and the weight of such a disposition as follows:

> "Summary affirmances and dismissals for want of a substantial federal question without doubt reject the specific challenges presented in the statement of jurisdiction and do leave undisturbed the judgment appealed from. They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions.... Summary actions, however, ... should not be understood as breaking new ground but as applying principles established by prior decisions to the particular facts involved."

*Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977) (per curiam).

To determine the issues properly presented to the Supreme Court on appeal, the appellant's jurisdictional statement must be examined. *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 182, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979). *See* Sup.Ct.R. 13 & 15. In *Mountain States*, the question presented was whether ERISA "preempts application of the 'Montana Maternity Leave Act' to Mountain Bell because it impermissibly interferes with the operation of [the employer's] federally-regulated employee benefit plan." In *Minnesota Mining*, the question presented was whether ERISA "preempts Minnesota's effort, by means of its fair employment practice statute, to dictate the contents of [the employer's] national employee benefit plan."

■ The text of the jurisdictional statements in both cases indicate clearly that the appellants were contending that the respective state statutes were inapplicable to their employee benefit plans due to the operation of section 514(a) of ERISA. Consequently, the issue of whether section 514(a) of ERISA preempted Montana's and Minnesota's

fair employment laws, as applied to covered employee benefit plans, were federal questions that were actually raised on appeal and necessarily decided by the summary dismissals. Although a summary dismissal does not have the same precedential value as does an opinion issued by the Court after briefing and argument, *see Richardson v. Ramirez*, 418 U.S. 24, 53, 94 S.Ct. 2655, 2670, 41 L.Ed.2d 551 (1974); *Edelman v. Jordan*, 415 U.S. 651, 670–71, 94 S.Ct. 1347, 1359, 39 L.Ed.2d 662 (1974), and "represents no more than a view that the judgment appealed from was correct as to those federal questions raised and necessary to the decision," *Washington v. Confederated Bands and Tribes of the Yakima Indian Nation*, 439 U.S. 463, 476–77 n. 20, 99 S.Ct. 740, 749 n. 20, 58 L.Ed.2d 740 (1979), it is nevertheless binding on the lower courts.

Recently, in *Delta Air Lines v. Kramarsky*, 650 F.2d 1287 (2d Cir. 1981), *rev'g in part, vacating in part*, 485 F.Supp. 300 (S.D. N.Y.1980), the Second Circuit rejected a challenge, on the ground of ERISA preemption, to New York's Human Rights Law (HRL). The panel based its decision on the Supreme Court's summary dismissal in *Mountain States* and *Minnesota Mining*.[18]

New York's HRL prohibits discrimination in employment because of sex, and has been interpreted by the New York Court of Appeals as requiring employers maintaining disability benefit plans to provide benefits for pregnancy on the same basis as for other covered disabilities. *Brooklyn Union Gas Co. v. New York State Human Rights Appeal Board*, 41 N.Y.2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393 (1976). Although the Second Circuit had summarily affirmed Judge Newman's decision in *Pervel*, holding that section 514(a) of ERISA preempted a similar Connecticut statute, the panel in *Delta Air Lines* considered *Mountain States* and *Minnesota Mining* to have answered in the negative the question of whether ERI-

---

**18.** While giving precedential weight to *Mountain States* and *Minnesota Mining* on the bare issue of ERISA preemption, the Second Circuit reiterated its prior rejection of the "double savings clause" theory. 650 F.2d at 1295 n. 10.

SA preempted the HRL. 650 F.2d at 1294–95.[19]

The other state law addressed in *Delta Air Lines* was New York's Disability Benefit Law (DBL). The Second Circuit panel did not consider the question of whether ERISA preempted the DBL to be foreclosed by the dismissals in *Mountain States* and *Minnesota Mining.* The court reasoned as follows:

> "Unlike the HRL and the state statutes upheld against ERISA preemption in *Minnesota* and *Mountain States, supra,* the DBL does not merely forbid employers to discriminate against workers disabled through pregnancy, *but instead affirmatively requires employers to provide minimum pregnancy benefits.* Because the DBL thus differs from the 'pure' antidiscrimination laws upheld in *Minnesota* and *Mountain States,* those decisions are not controlling with respect to it, and we must make an independent review of its validity. *Cf. Mandel v. Bradley, supra,* 432 U.S. at 176, 97 S.Ct. at 2240."

650 F.2d at 1202 (emphasis supplied).

After discussing the scope of section 514(a) the court remanded this aspect of the case to the District Court for a determination of whether any of the plaintiffs maintained disability plans that were adopted "solely" to comply with the DBL. *See* section 4(b)(3), 29 U.S.C. § 1003(b)(3).[20]

Westinghouse contends that section 17 of *Md.Code Ann.* Art. 49B is more similar to the DBL than it is to either the HRL or the state laws at issue in *Mountain States* and *Minnesota Mining.* According to Westinghouse, therefore, this court should disregard the precedential effect of *Mountain States* and *Minnesota Mining,* as well as the holding of *Delta Air Lines* with respect to the HRL. Additionally, Westinghouse urges the court to follow the Second Circuit's preemption analysis in *Delta Air Lines,* as

applied to the DBL, when considering section 17 of *Md.Code Ann.,* Art. 49B.

Westinghouse's assertion that section 17 and the DBL are similar, because both statutes specifically address pregnancy disability benefits, is misguided. Both the Montana and the Minnesota statutes specifically prohibited the denial of pregnancy benefits where the employer maintained a plan that provided benefits for other disabilities. Moreover, the HRL acquired this meaning through judicial interpretation. Such is also the effect of section 17. What distinguishes these laws from the DBL is not their specific reference to pregnancy benefits. Rather, the DBL, unlike the other laws, expressly requires employers to provide a minimum level of pregnancy disability benefits. In other words, while section 17, the HRL, and the statutes at issue in *Mountain States* and *Minnesota Mining* simply prohibit employers from treating pregnancy-related disabilities differently from other disabilities, the DBL mandates that employers provide at least eight weeks of coverage for pregnancy-related disabilities. Consequently, even assuming that this difference between the DBL and the other laws is of legal significance, Westinghouse's assertion that the precedential effect of *Mountain States* and *Minnesota Mining* can be ignored with respect to section 17 must be rejected.

Westinghouse next contends that the Supreme Court's recent decision in *Alessi v. Raybestos-Manhattan, Inc.,* —— U.S. ——, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), undercuts the precedential value of *Mountain States* and *Minnesota Mining,* and militates in favor of finding section 17 to be preempted by ERISA. This court disagrees. Although the Supreme Court did hold a portion of New Jersey's workmen's compensation law to be preempted by section 514(a), the questions addressed in *Alessi* are quite

---

19. Although it considered the summary dismissals "rather mystifying," because the appeal in *Minnesota Mining* was dismissed exactly one week after the Supreme Court denied certiorari in both *Pervel* and *Bucyrus-Erie Co.,* the court rejected the company's arguments that the dismissals were without precedential value. 650 F.2d at 1295.

20. As previously noted, the MCHR does not contend that the § 4(b)(3) exemption is applicable to this case. *See* note 8 and accompanying text *supra.*

different from those raised in this case. Moreover, the Court's preemption analysis was tailored to the specific state law at issue in *Alessi*.

The state law challenged in *Alessi* prohibited employers from offsetting or otherwise reducing pension benefits by amounts received by the pensioner under the workmen's compensation statute. In other words, New Jersey law prohibited a type of integration, "a calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employee." —— U.S. at ——, 101 S.Ct. at 1901. After reviewing ERISA and its legislative history, as well as certain Treasury and Internal Revenue Service regulations that were in effect when ERISA was enacted, the Court ruled that New Jersey's law "relates" to pension plans governed by ERISA "because it eliminates one method for calculating pension benefits—integration—that is permitted by federal law." [21] —— U.S. at ——, 101 S.Ct. at 1907. That New Jersey's law was not a direct attempt to regulate ERISA covered plans was held to be of no significance under the facts of the case; "even indirect state action bearing on private pensions *may* encroach upon the area of exclusive federal concern." —— U.S. at ——, 101 S.Ct. at 1907 (emphasis supplied). The Court made it clear, however, that it was not "determin[ing] the outer bounds of ERISA's pre-emptive language." —— U.S. at ——, 101 S.Ct. at 1907. For example, in footnote 21 the Court stated:

> "Other courts have reached varying conclusions as to the meaning of ERISA's pre-emptive language in other contexts. *See, e. g., American Telephone and Telegraph Co. v. ·Merry*, 592 F.2d 118 (CA2 1979); *Stone v. Stone*, 450 F.Supp. 919 (ND Cal.1978); *Gast v. Oregon*, 36 Or. App. 441, 582 P.2d 12 (Ore.Ct.App.1978).

We express no views on the merits of any of those decisions." —— U.S. at —— n. 21, 101 S.Ct. at 1907 n. 21.

Nevertheless, Westinghouse contends that since *Gast* involved a challenge to a similar state fair employment law, the way in which the Court cited *Gast* indicates that the Court did not intend its summary dismissals in *Mountain States* and *Minnesota Mining* to be accorded precedential weight. This contention must be rejected for several reasons. First, unlike *Mountain States* and *Minnesota Mining*, the cases cited by the Court in footnote 21 all employed an "implied exception" rationale to save state laws from preemption by ERISA. Second, nowhere in the opinion does the Court mention its summary dismissals in *Mountain States* and *Minnesota Mining*, or its denials of certiorari in *Pervel* and *Bucyrus-Erie Co.* Finally, the Court stated expressly that the decisions in the cited çases were reached "in other contexts," and that it "express[ed] no views on the merits of any of these decisions." —— U.S. at ——, 101 S.Ct. at 1907 n. 21. In sum, this court would be indulging in sheer speculation by reading into footnote 21 of *Alessi* the meaning urged by Westinghouse.

## IV. Conclusion

■ The full import of ERISA cannot be derived from the language of a single sentence or section. Instead, congressional intent must be discerned by considering the entire enactment against the backdrop of its policies and objectives.[22] *See, e. g., Philbrook v. Glodgett*, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975); *Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 592, 7 L.Ed.2d 492 (1962). Such an approach is especially important here, because in the Civil Rights Act of 1964 Congress made it clear that the federal

---

**21.** An additional federal interest noted by the Court as militating in favor of preemption was the preclusion of state interference in matters connected with a collective bargaining agreement. —— U.S. at ——, 101 S.Ct. at 1906. However, the Court took pains to limit this interest to the particular state regulation at issue. —— U.S. at —— n. 22, 101 S.Ct. at 1907 n. 22.

**22.** In addressing the issues presented in *Alessi*, the Court did not restrict its analysis to isolated words or sections.

government was not occupying the field with respect to the enforcement of fair employment laws.

The "double savings clause" approach embraced by the Seventh Circuit and by the majority of state appellate courts is, admittedly, novel. Nevertheless, it is a legitimate analytical approach to a difficult policy question, and it does provide an adequate legal basis upon which to preserve crucial state fair employment laws from preemption by ERISA. While this court cannot attribute to the Supreme Court's summary dismissals in *Mountain States* and *Minnesota Mining* an acceptance by the Court of the "double savings clause" theory, these cases are decisions on the merits. As noted by the Second Circuit in *Delta Air Lines*, " 'the privilege of disregarding even summary Supreme Court holdings rests with that court alone,' " 650 F.2d at 1295, *quoting Doe v. Hodgson*, 500 F.2d 1206, 1207–08 (2d Cir. 1974). *Accord, Hogge v. Johnson*, 526 F.2d at 835.

The fundamental Congressional goal in enacting ERISA was to protect workers by ensuring the financial soundness and the overall integrity of employee benefit plans. Section 2, 29 U.S.C. § 1001. Although the words of section 514(a), as well as Congressional remarks in the legislative history, are sweeping in scope, the court can find no evidence that Congress considered the full import of preemption on state fair employment laws not directly regulating employee benefit plans, but whose enforcement affects the benefits to be provided by such plans. The position urged by Westinghouse is that through ERISA, Congress has occupied the field regarding the regulation of employee benefit plans, and has displaced all state fair employment laws purporting to govern the content of covered plans. In light of the Supreme Court's actions in *Mountain States* and *Minnesota Mining*, this court cannot agree.

The national importance of the continued enforcement of state fair employment laws is self-evident, and the "States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State." *De Canas v. Bica*, 424 U.S. 351, 356, 96 S.Ct.

933, 937, 47 L.Ed.2d 43 (1976). Given that ERISA is not addressed to employment discrimination, and the often conflicting statements in the relevant legislative histories, the court concludes that preemption is not required either because "the nature of the regulated subject matter permits no other conclusion, or [because] Congress has unmistakably so ordained." *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). To hold otherwise would give judicial sanction to an, at best, unintentional disturbance by Congress of a critical aspect of the federal-state balance. *See Jones v. Rath Packing Co.*, 430 U.S. at 525, 97 S.Ct. at 1309. Accordingly, this court joins with the Seventh Circuit and the state appellate courts in accepting the validity of the "double savings clause" approach, and holds that section 16 and section 17 of *Md.Code Ann.* Art. 49B are not preempted by section 514(a) of ERISA.

It is, therefore, this 29th day of June, 1981, by the United States District Court for the District of Maryland, ORDERED that:

1. The summary judgment motion of Westinghouse is DENIED.

2. The summary judgment motion of the MCHR is GRANTED.