In the Matter of GREATER BUFFALO CHAPTER, AMERICAN RED CROSS, Respondent, v STATE DIVISION OF HUMAN RIGHTS, Appellant. (Appeal No. 1.)

In the Matter of GREATER BUFFALO CHAPTER, AMERICAN RED CROSS, Respondent, v STATE DIVISION OF HUMAN RIGHTS, Appellant. (Appeal No. 2.)

Fourth Department, July 11, 1986

## APPEARANCES OF COUNSEL

*Roberto Albertorio (Christopher R. Knauth* of counsel), for appellant.

*Hodgson, Russ, Andrews, Woods & Goodyear (David A. Farmelo* of counsel), for respondent.

## OPINION OF THE COURT

CALLAHAN, J. P.

At issue here is whether the Red Cross, as a Federal instrumentality, is exempt from compliance with the substantive provisions of the New York State Human Rights Law (Executive Law, art 15, § 290 *et seq.*). The parties agree that there is no case, statute or regulation, either State or Federal, which specifically addresses this issue.

The question presents a constitutional issue which involves the supremacy clause of the United States Constitution (US Const, art VI, cl [2]).* The Red Cross contends that the supremacy clause prohibits the State of New York from enforcing the employment discrimination provisions of its Human Rights Law against the Red Cross due to its status as a Federal instrumentality. On the other hand, the State Division of Human Rights (SDHR) contends that the Red Cross is subject to the State Human Rights Law as part of the police power of the State of New York.

The issue arises in the following factual context. On April 28, 1980, Janet B. Hughes, a long-time employee of the Red Cross, filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) office in Buffalo, alleging that she had been terminated from her employment due to her age, sex and disability. In her complaint, she claimed that during December 1979, she had sustained a back injury while lifting boxes of literature in the course of her employment and was unable to work from December 12, 1979 through February 11, 1980; also that on February 29, 1980 she was asked to submit her resignation or her employment would be terminated. The EEOC deferred this complaint to the SDHR pursuant to a SDHR/EEOC work sharing agreement.

---

* "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

On May 29, 1980, Ms. Hughes filed a similar complaint with SDHR charging the Red Cross with unlawful discrimination based on her age, disability and sex.

On March 3, 1983, Percy Barbour, also a former employee of the Red Cross, filed a discrimination complaint with SDHR. Barbour alleged that he had been terminated from his employment on the basis of race.

In June 1984, the SDHR served a subpoena and subpoena duces tecum upon the Red Cross in connection with both the Hughes and the Barbour investigations. The attorney for the Red Cross wrote to the SDHR requesting that the subpoenas be withdrawn pursuant to CPLR 2304 on the grounds that the Red Cross is a "quasi-official agency of the federal government" and not subject to the jurisdiction of the SDHR. Thereafter, the Red Cross brought the instant motion pursuant to CPLR 2304 to quash and vacate the subpoena and subpoena duces tecum in both the Hughes and Barbour matters. Special Term concluded that the Red Cross is a Federal instrumentality not subject to the substantive provisions of the New York State Human Rights Law and granted petitioner's motion to quash and vacate the subpoenas and denied SDHR's cross motion. SDHR appeals.

The American National Red Cross was incorporated by an act of Congress on January 5, 1905. Congress has conferred upon it a quasi-governmental status under legislation which sets forth its principal functions and prescribes the organization and method of operation. The Red Cross, including its local units within this State, is an instrumentality of the United States engaged in the performance of special functions of government (Department of Employment v United States, 385 US 355). The Attorney-General of the State of New York has recognized the Red Cross as a Federal instrumentality, exempt from a State statute requiring charitable organizations soliciting donations to register with the Department of Social Welfare (1954 Opns Atty Gen 201-202); nor is it subject to New York Disability Benefits Law (1964 Opns Atty Gen 32-33). Nevertheless, this does not preempt the local Red Cross units from compliance with New York's Human Rights Law.

Preemption implicates important Federal-State relationships. Consequently, "when a State's exercise of its police power is challenged under the Supremacy Clause, 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless

that was the clear and manifest purpose of Congress' " *(Ray v Altantic Richfield Co.,* 435 US 151, 157, quoting *Rice v Sante Fe Elevator Corp.,* 331 US 218, 230). As Mr. Justice Marshall noted in *Jones v Rath Packing Co.* (430 US 519, 525) "[t]his assumption provides assurance that 'the federal-state balance' * * * will not be disturbed unintentionally by Congress or unnecessarily by the courts". "Thus, as is usually the case, '[t]he purpose of Congress is the ultimate touchstone.' *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103" *(Westinghouse Elec. Corp. v State of Md. Commn. on Human Relations,* 520 F Supp 539, 542 [US Dist Ct Md 1981]).

We note that the Federal statute dealing with employment discrimination contemplates and encourages the enforcement of State fair employment laws as an essential component of the Federal statutory framework *(see, e.g., New York Gaslight Club v Carey,* 447 US 54, 63-65; *Alexander v Gardner-Denver Co.,* 415 US 36, 47-49; *Westinghouse Elec. Corp. v State of Md. Commn. on Human Relations, supra).* How then can subjecting a Federal instrumentality such as the Red Cross to the jurisdiction of SDHR constitute an impermissible interference with its operations.

Civil Rights Act of 1964 title VII (42 USC §§ 2000e—2000e-17) exempts State fair employment laws from preemption by that law. The Federal statute (42 USC § 2000e-7) specifically provides: "Nothing in this [subchapter] shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this [subchapter]."

Significantly, the term "person" as used in the statute specifically is defined as including "one or more individuals, *governments, governmental agencies* * * * [and] associations" (42 USC § 2000e [a]; emphasis added). In addition, the Federal statute (42 USC § 2000h-4) provides: "Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof."

Given these provisions and other provisions of the Federal statute which envision a scheme of interrelated and complementary State and Federal enforcement to resolve problems of employment discrimination (see, 42 USC §§ 2000e-5, 2000e-8 [b]), as evidenced by the fact that the EEOC in the Hughes case specifically referred this case to SDHR for investigation, we find no Federal preemption here. We conclude that New York's exercise of its police power under the Human Rights Law (see, Executive Law § 290 [2]) appears to be specifically preserved under the Federal Equal Employment Opportunity Act. In our view, the Federal Civil Rights Act both permits and contemplates the enforcement of State employment discrimination law.

Furthermore, this is not a situation where the State law impermissibly interferes with the operations of a Federal instrumentality. The Red Cross' argument that the application of the State Human Rights Law to its operation would interfere with its personnel management is unpersuasive. The employees are not Federal employees and there is no claim that the personnel department of the Red Cross is centralized. Given the interrelated and complementary State and Federal laws dealing with discrimination in employment, requiring a local chapter of the Red Cross to comply with a State fair employment law cannot be said to interfere with the National purposes and Federal character of the Red Cross. It does not appear that responding to these subpoenas or complying with the Human Rights Law would directly interfere with any function performed by the Red Cross as a Federal instrumentality.

Accordingly, the orders should be reversed, and respondent's cross motion to enforce the subpoenas should be granted.

DOERR, BOOMER, LAWTON and SCHNEPP, JJ., concur.

Orders unanimously reversed, on the law, without costs, and respondent's cross motions granted.